Gerardo Arias TORRES, et al., Plaintiffs,

v.

SOUTHERN PERU COPPER CORPORATION, et al., Defendants.

Civil Action No. C–95–495.

United States District Court, S.D. Texas, Corpus Christi Division.

Jan. 18, 1996.

Robert C. Hilliard, Hilliard & Grillo, Corpus Christi, TX, Andrew C. Schirrmeister III, Zummo & Schirrmeister L.L.P., Houston, TX, for Plaintiffs.

Mitchell Craig Chaney, Norton A. Colvin, Joseph Anthony Rodriguez, Eduardo Roberto Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, TX, Doug Lackey, Brown, McCarroll and Oaks Hartline, Austin, TX, Thomas John Ward, Brown, McCarroll and Oaks Hartline, Longview, TX, Peter J. Nickles, Covington & Burling, Washington, DC, Joanne B. Grossman, Allan B. Moore, Covington & Burling, Washington, DC, for Defendants.

Mark A. Cymrot, Baker & Hostetler, Washington, DC, Darrell Lee Barger, Barger and Moss, Corpus Christi, TX, for Movants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

JACK, District Judge.

On this date came to be considered Defendants Southern Peru Copper Corporation, et al.'s Motion to Dismiss against Plaintiffs Gerardo Arias Torres and Mamani Yanez, Individually and as Next Friend for Claudio Arias Mamani and Helenara Arias Mamani, Minors, et al.

### I. JURISDICTION

Defendants removed this action to federal court pursuant to federal question jurisdiction under 28 U.S.C. § 1331. For the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss.

### II. FACTS

Defendants, collectively or individually, owned and/or operated copper mining operations, smelting facilities, and other attendant facilities necessary for the exploitation of copper and other natural resources in the Southern Pacific coastal region of Peru. Plaintiffs filed suit in state court, alleging that during the time of the development and operation of such mining, smelting and attendant facilities, Defendants collectively, and/or individually released into the air, water and ground, toxic and hazardous gases, wastes, metals, substances and chemicals, such releases allegedly being the proximate and/or producing cause(s) of the damages allegedly accruing to Plaintiffs. Plaintiffs allege causes of action for negligence, intentional infliction of emotional distress, nuisance and/or nuisance per se, malice, fraud, intentional tort, gross negligence, res ipsa loquitur and assault and battery.

On September 29, 1995, Defendants removed this action to federal court alleging both diversity and federal question jurisdiction. On October 17, 1995, Plaintiffs moved to remand. Finding federal question jurisdiction, this Court denied Plaintiff's motion to remand on December 4, 1995. The Court

now considers Defendants' Motion to Dismiss.

## III. DISCUSSION

### 1. Forum Non Conveniens

■ When considering a motion to dismiss for *forum non conveniens*, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1355 (S.D.Tex.1995) (citing *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947)). The Fifth Circuit has fashioned a *forum non conveniens* analysis involving a three step inquiry. First, the court must determine whether there exists another forum that is available to the litigants and would provide an adequate remedy to the prevailing party. *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1165 (5th Cir.1987). If the Court concludes the foreign forum is both available and adequate, it should then consider all the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum. *Id.* If the district court finds the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors. *Id.* Defendants bear the burden of persuasion as to all elements of the *forum non conveniens* analysis. *Id.* at 1164.

### (a) Availability of an adequate alternative forum

■ Because "[i]n all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process," *Delgado*, 890 F.Supp. at 1356 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947)), "[a] forum non conveniens dismissal should never be granted ... unless the defendant can satisfy the court that an adequate and available alternative forum exists." *Id.* (citing *Perusahaan Umum Listrik Negara Pusat v. M/V TEL AVIV*, 711 F.2d 1231, 1238 (5th Cir.1983)). Determining whether an alternative forum is available is a two-step inquiry. *Id.*

A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly even though they may not enjoy the same benefits as they might receive in an American court.

*In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d at 1165 (citations omitted).

#### (i) Availability

The Fifth Circuit holds that "defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of forum non conveniens analysis ... [and] condition[ing] dismissal ... [upon] defendant's submission to the jurisdiction of an alternative forum is one particularly effective manner of assuring that the alternative forum is available." *Veba–Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245, 1249 (5th Cir.1983).

■ In this case Plaintiffs argue that Defendants' consent to jurisdiction may not be sufficient because Peruvian courts will decline to exercise jurisdiction once Plaintiffs initiated the action elsewhere. The Fifth Circuit, as well as district courts, have previously addressed this argument. In *Delgado v. Shell Oil*, 890 F.Supp. 1324 (S.D.Tex.1995), the court noted that the Fifth Circuit's opinion in *Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d 821 (5th Cir.1986), satisfies Plaintiffs' concerns: "In order to ensure an available foreign forum, we make explicit the fact that the dismissal is conditioned upon the willingness of the English courts to hear this case as transferred by a sister American court." *Delgado*, 890 F.Supp. at 1356–57, (citing, *Syndicate 420 at Lloyd's London*, 796 F.2d at 830). The court in *Delgado* therefore conditioned its dismissal "not only on the defendants' and third-party defendants' stipulation to waive all jurisdictional and limitations defenses but also upon acceptance of jurisdiction by the foreign courts involved in these cases." *Delgado*, 890 F.Supp. at 1357. This Court likewise conditions its dismissal for *forum non conveniens* on Defendants' stipulation to waive all

jurisdictional and limitations defenses to jurisdiction in Peru and also conditions dismissal for *forum non conveniens* upon acceptance of jurisdiction by the Peruvian courts. The Court therefore finds Peru an available forum.

*(ii) Adequacy*

■ Plaintiffs argue the courts of Peru are inadequate because they are allegedly corrupt. Pl.s' Resp. pp. 35–38. Additionally, Plaintiffs claim that Peru's judicial system is in "complete disarray," and that delay, financial and procedural barriers make adjudication of this action in Peru inadequate. *Id.* at pp. 38–48.

### 1) CORRUPTION

Peru has three branches of government: legislative, executive and judicial. Def.s' Ex A, ¶ 4.2, Mot. Dismiss. The Peruvian constitution requires that the judicial branch abide by the concept of due process. *Id.* at ¶ 4.4. Under the Constitution judges are appointed by an independent council which is comprised of members of the Judiciary, Bar Associations and other professional organizations. *Id.* at ¶ 5.3.

Defendant SPCC submits evidence of a number of adverse rulings against it by the courts and government of Peru. Additionally, the government of Peru monitors the damages incurred by Ilo Valley farmers as a consequence of the emissions from SPCC's smelter. Def.s' Ex. J, ¶ 9 Mot. Dismiss. SPCC has been required to pay compensation to the farmers of the Ilo and Tambo valleys as a result of those emissions. *Id.* at ¶ 8. Although the assessments were subject to review through administrative and court proceedings, SPCC has been unsuccessful in obtaining reduction of any of those assessments. *Id.* Beginning in late 1993, SPCC entered into settlement agreements with nearly all the Ilo Valley farmers. *Id.* Under those settlement agreements, SPCC has agreed to pay an aggregate of approximately $291,000 per year for five years ending in 1998. *Id.* Additionally, SPCC is currently a party in at least 311 cases which are pending before Peruvian courts. *Id.* at ¶ 13. These cases involve disputes between SPCC and private individuals as well as disputes between SPCC and various departments of the Peruvian government. *Id.* Of the approximately 311 cases pending before Peruvian courts to which SPCC is a party, SPCC is a defendant in at least 184 of them. *Id.* at ¶ 14. Of the approximately 127 cases in which SPCC is the plaintiff, 23 involve appeals by SPCC of adverse decisions in administrative proceedings. *Id.* In 1992, the Supreme Court of Peru ruled against SPCC in an environmental action brought by the Mayor of the Province of Tacna, Peru. *Id.* at ¶ 16. The Court ordered SPCC to prevent the discharge of mine tailings into the sea. *Id.* To comply with this order, SPCC has undertaken various actions to capture the tailings in an in-land impoundment, at an estimated cost of approximately $41 million. *Id.*

Although Plaintiff argues the judicial system is in "complete disarray", the above evidence rebuts this allegation. Moreover, Plaintiffs do not assert that they have made any attempt, but have been unable, to pursue these claims in Peruvian courts.

Lastly, the Fifth Circuit has explicitly or implicitly concluded that Peru is an adequate alternative forum for purposes of *forum non conveniens* rulings. *See, Gonzalez v. Naviera Neptuno A.A.,* 832 F.2d 876 (5th Cir. 1987) (dismissing action by Peruvian plaintiffs for wrongful death under Jones Act on grounds of *forum non conveniens,* finding "[b]oth private and public interests weigh heavily in favor of a Peruvian forum") and *Diaz v. Humboldt,* 722 F.2d 1216 (5th Cir. 1984), *overruled on other grounds, Air Crash Disaster,* 821 F.2d at 1147 (district court's dismissal for *forum non conveniens* should have been made conditional upon defendant's stipulation to suit under Peruvian jurisdiction). The Court finds that Peru is an adequate forum.

### 2) FINANCIAL AND PROCEDURAL BURDENS

■ Plaintiffs claim that "[f]inancial barriers such as legal fees, cost bonds, filing fees and related expenses are beyond the economic means of the plaintiffs before this Court and preclude any meaningful relief in Peru."

Pl.s' Resp. p. 48. Plaintiffs also complain that procedural differences render a Peruvian forum inadequate.

The Court in *Delgado* addressed these same arguments. *Delgado* involved claims by citizens of 12 foreign countries who sought damages for injuries stemming from alleged exposure to a pesticide manufactured and distributed by U.S. and foreign defendants, while working on banana farms in 23 different countries. In that case the plaintiffs argued that contingent attorney's fee contracts were either illegal or unethical in many of their home countries; that plaintiffs' expected recoveries would be greatly diminished in their home countries; that most of their home countries did not provide civil jury trials and did not allow recovery of non-economic harm or punitive damages; that the number of witnesses would be severely limited; that plaintiffs or their family members may not be allowed to testify; and that deposition testimony could not be substituted for the testimony of live witnesses. The court found that "the alleged deficiencies in the judicial systems of the plaintiffs' home countries are relevant only to the balancing of private interests that will be conducted in the event that adequate alternative fora are found to exist." 890 F.Supp. at 1357 (citing *Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 575–76 (5th Cir.1987)). The *Delgado* court therefore did not find the plaintiffs' arguments to be evidence of an inadequate forum.

Likewise, the Fifth Circuit holds that a court may find an adequate alternative forum exists even though plaintiffs may not find a substantially comparable remedy in the foreign forum.

> *Piper Aircraft* held that a difference in the substantive law governing the action "should not be given conclusive or even substantial weight in the forum non conveniens inquiry." In *Piper* that meant that the unavailability of strict liability as a theory of recovery was insufficient to render a Scottish forum inadequate for the resolution of a products liability action.

*Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d at 829. "[I]f conclusive or substantial weight were given to the possibility of a change in law, the forum non conveniens doctrine would become virtually useless." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981). In light of this holding, the Court will address the adequacy of the remedies available under the laws of Peru.

Peru is a civil law country. Def.s' Ex. A. ¶ 6.2, Mot. Dismiss. Under Peruvian law an individual who alleges to have suffered personal injury or property damage as a result of the acts or omissions (including the mining or mining-related activities) of another person may bring a claim for damages against such person. *Id.* at ¶ 9.6; Def.s' Ex. B ¶ 10, Mot. Dismiss.

Plaintiffs submit an affidavit from Luz Aurea Saenz Arana, former Comptroller General of Peru. Ms. Arana states that Peruvian statutes "establish the right of the inhabitants of Peru to compensatory damages for damage to their person, property and moral interests" and that "the SPCC shareholders and lenders, as well as its senior management representatives, are fully and absolutely liable for damages caused to inhabitants of the Ilo and to the natural resources, and are subject, under the law, to being sued for joint liability for compensation for the damages caused, as there is no exemption for their being liable." Pl.s' Ex. 9, ¶ 7, Resp.

Utilizing Plaintiffs' own evidence, the Court finds that the courts of Peru provide Plaintiffs a remedy. The Court therefore finds Peru is an adequate alternative forum.

**(b) Private Interest Factors**

Once a court determines that a "foreign forum is both available and adequate, it should then consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d at 1165.

*(i) The Relevant Deference*

■ While district courts "ordinarily should respect an American plaintiff's forum choice, a foreign plaintiff's choice of an

American forum merits less deference." *Delgado*, 890 F.Supp. at 1366.

Convenience is the ultimate consideration for a district court in balancing the private interest factors, including the forum choice of the plaintiff. When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice.

*Empresa Lineas Maritimas Argentinas S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 373 (5th Cir.1992). All Plaintiffs are citizens of Peru, therefore their choice of an American forum shall merit less deference.

*(ii) Balancing the interests*

■ The private interests to be considered include: (i) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (iii) possibility of view of premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (v) enforceability of a judgment if one is obtained. *Delgado*, 890 F.Supp. at 1366 (citing *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 878 (5th Cir.1987)).

## 1) RELATIVE EASE OF ACCESS TO SOURCES OF PROOF

■ Plaintiffs claim damages for personal injuries and damage to property. Pl.s' Pet. ¶ 21. Plaintiffs contend Defendants have polluted the "air, ground and water" in Peru with "toxic and hazardous gases, wastes, metals, substances and chemicals," *Id.* at ¶ 5, and that Defendants have "endanger[ed] the waters (surface, ground and oceans), soils and air in the southern Peruvian coastal region." *Id.* at ¶ 13. Plaintiffs seek damages for bodily injury and physical impairment; physical pain, suffering and mental anguish; emotional distress; increased risk of disease and cost of medical monitoring; medical expenses; disfigurement; loss of earnings and earning capacity; devaluation and/or loss of use of their property and vegetation; and loss of consortium, services and inheritance. *Id.* at ¶ 20.

Defendants argue that to properly investigate and defend against these allegations entails access to documentary evidence in Peru, such as employment, medical and school records, and to witnesses in Peru, such as Plaintiffs' employers, relatives, co-workers, treating physicians and teachers. Additionally, Defendants argue that litigating whether any of Defendants' operations actually resulted in "pollution", and, if so, whether the "pollution" was "intentional" or "negligent" conduct, will require not only review of extensive documents in Peru, but also securing testimony from many witnesses in Peru and testing the air, water and soil in Peru. Def.s' Ex. K, ¶¶ 4, 6, Mot. Dismiss.

Plaintiffs counter that if they are forced to litigate this action in Peru, they will be "faced with the inability to compel the production of foreign witnesses and documents." Pl.s' Resp. p. 49. However, Plaintiffs "do not identify any specific group of persons located in Texas who possess either large amounts of information or particularly critical pieces of information who could not be subjected to compulsory appearance in plaintiffs' home countries as employees of a party defendant." *Delgado*, 890 F.Supp. at 1367.

In *Delgado*, although each plaintiff offered to appear in Houston, Texas at his or her own expense; submit to deposition and examination by defendants' medical or other experts; and bring at least two co-workers, and all medical staff necessary to prove the extent of his or her injury, the court held that these stipulations:

do not provide a realistic alternative to proceedings in plaintiffs' home countries. Plaintiffs' stipulations do not satisfy defendants' need to obtain access to information in the possession of non-parties such as plaintiffs' family members, neighbors, supervisors, and former or current employers.

890 F.Supp. at 1367.

The Court concludes the overwhelming majority of the relevant sources of proof are more readily available in Peru, and that this factor weighs heavily in favor of dismissal.

## 2) AVAILABILITY OF COMPULSORY PROCESS FOR ATTENDANCE OF UNWILLING WITNESSES AND THE COSTS OF OBTAINING ATTENDANCE OF WILLING WITNESSES

The overwhelming number of fact witnesses live in Peru. With the exception of the named Plaintiffs, none of these witnesses are subject to the subpoena power of this Court. Additionally, transportation costs of bringing witnesses from Peru to Corpus Christi will be very high. The overall economic costs of this litigation will be greater if Plaintiffs and their witnesses travel to Corpus Christi than if Defendants' representatives and their documents are transported to Peru. This factor weighs heavily in favor of dismissal.

## 3) POSSIBILITY OF VIEW OF PREMISES

Plaintiffs claim damages for devaluation and/or loss of vegetation, as well as devaluation and/or loss of use and enjoyment of personal property. Although a viewing may not be necessary, it could conceivably be called for later in the litigation. A Peruvian court is in a far better position to direct and supervise such a viewing should one ever be required. This consideration, although minor, also weighs in favor of dismissal.

## 4) OTHER PRACTICAL PROBLEMS THAT MAKE TRIAL OF A CASE EASY, EXPEDITIOUS, AND INEXPENSIVE

Plaintiffs argue that trial in this Court will be much less costly and will proceed much faster than trial in Peru. Plaintiffs contend that Peruvian courts are understaffed, backlogged and ill-equipped to handle the sheer number of plaintiffs and complexity of this case in a timely, efficient manner. Plaintiffs also argue that the availability of interlocutory appeals and other differences between case management techniques will result in unnecessary delay. Finally, Plaintiffs argue that legal fees, cost bonds, filing fees and related expenses are beyond the means of Plaintiffs and "preclude any meaningful relief in Peru." Pl.s' Resp. p. 48.

Defendants submit evidence that Peru has "no legal or moral prohibition against hiring lawyers on the basis of contingency fees." Def.s' Ex. A, ¶ 10.6, Mot. Dismiss. Defendants also argue that although there is no pre-trial discovery to the extent available in the United States, the Peruvian courts have sufficient power to direct the proceeding, compel the production of evidence and testimony of witnesses, and in special circumstances to order the preservation or the production of evidence prior to the opening of the evidentiary period. Id. at ¶ 10.3. The judgment of the trial court can be appealed to the Superior Court and may eventually be reviewed by the Supreme Court. Id. at ¶ 10.4. Additionally, Defendants argue that because many relevant documents are written in Spanish, and because many witnesses speak only Spanish, trial in this Court would require the added expenses of interpreters and transcription of documents. Def.s' Ex. J, ¶ 19, Mot. Dismiss.

The Court finds these considerations in equipoise.

## 5) WILL A FOREIGN JUDGMENT BE ENFORCEABLE?

Defendants state that judgments in Peru are enforced through a summary execution proceeding. Def.s' Ex. A, ¶ 10.5, Mot. Dismiss. Defendants argue that assets and bank accounts of a defendant can be attached and forcibly seized and, in the case of goods, subject to forced sale. Id. Dismissal of this action under *forum non conveniens* is conditioned upon Defendants' submission to the jurisdiction of the Peruvian courts and upon Defendants' agreement to establish a mechanism guaranteeing satisfaction of any judgment rendered against Defendants in Peru. Such agreement would result in no effective difference between a judgment rendered in a foreign court and one rendered in the United States. Since such an agreement would place this factor in equipoise it will be afforded no weight in the balancing of interests.

## 6) WAS DEFENDANTS' MOTION TO DISMISS FILED IN A TIMELY MANNER?

Plaintiffs filed their original petition in state court on August 31, 1995. The remov-

ing Defendants were served on September 25, 1995. These Defendants removed this action on September 29, 1995, and filed a Motion to Dismiss on October 2, 1995. The Court finds Defendants were not dilatory in moving to dismiss this action and delay is afforded no weight in the balancing of interests.

### (iii) Conclusion

In summary, the private interest factors weigh greatly in favor of dismissal on the grounds of *forum non conveniens*. Since the "balance is strongly in favor of the defendant[s]" and foreign plaintiffs' choice of a foreign forum is given less than maximum deference, the Court determines that dismissal is favored at this point in the inquiry. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843.

### (c) Public Interest Factors

If a district court concludes that an adequate alternative forum is available and that the balance of private interest factors strongly favors dismissal, it "ha[s] no need to consider the public interest factors." *Delgado*, 890 F.Supp. at 1370 (citing *Empresa Lineas Maritimas v. Schichau–Unterweser, A.G.*, 955 F.2d at 376). Nonetheless, the Court will discuss below the public interest factors.

### (i) Balancing the Interests

In *Piper Aircraft Co. v. Reyno*, the Supreme Court synthesized the public interest factors enumerated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):

> The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfair-

ness of burdening citizens in an unrelated forum with jury duty.

454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

### 1) LOCALIZED CONTROVERSIES

This controversy involves approximately 700 Peruvian plaintiffs alleging injuries as a result of SPCC's mining and smelting operations in Peru. SPCC is incorporated in Delaware and has its principle place of business in Peru. The other Defendants are shareholders and financiers of SPCC, none of which are incorporated in Texas or have their principal place of business in Texas. The controversy is not "localized" in the Southern District of Texas, or in any other location in Texas. The only connection Plaintiffs have shown to Texas is that SPCC's controlling shareholder, ASARCO, "conducts operations" in Texas. As the Court stated in *Delgado*, "the dearth of evidence linking plaintiffs' claims to Texas weighs heavily in favor of dismissal." 890 F.Supp. at 1370 (citing *Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d at 831–32).

### 2) INTEREST IN HAVING DIVERSITY CASES TRIED BY A COURT THAT IS "AT HOME" WITH THE LAW THAT MUST GOVERN THE ACTION/AVOIDANCE OF UNNECESSARY PROBLEMS IN CONFLICT OF LAWS

Defendants argue that Peruvian law will apply to this case because no other nation has any significant relationship to the claims brought. Plaintiffs argue that discovery will most likely show that American law will control because decisions regarding mining operations may have been made: in New York at SPCC's headquarters; in Texas where Plaintiff states SPCC's controlling shareholder ASARCO conducts operations; in Delaware where many of the Defendants are incorporated; or a combination of these jurisdictions. Because the choice of law question is not yet resolved, the Court attributes little weight to this factor.

### 3) THE UNFAIRNESS OF BURDENING CITIZENS IN AN UNRELATED FORUM WITH JURY DUTY

In arguing that a Peruvian forum is inadequate, plaintiffs cite the fact that Peru is a civil law country and therefore does not utilize jury trials. If this case remains in Texas, Plaintiffs have demanded a jury trial. However, "[w]hen citizens of the United States serve as jurors they are compelled to forsake their chosen occupations for the duration of the trial . . . [i]n light of the tenuous connection between the Southern District of Texas and the subject matter of these lawsuits, the court concludes that this factor weighs heavily in favor of dismissal." *Delgado,* 890 F.Supp. at 1371.

### (ii) Conclusion

Defendants have demonstrated that there is no significant connection between the substance of Plaintiffs' complaints and this forum. The Court therefore finds that public interest factors weigh in favor of dismissal.

### 2. Comity of Nations

 Under the doctrine known as comity of nations, a court should decline to exercise jurisdiction under certain circumstances in deference to the laws and interests of another foreign country. *See Sequihua v. Texaco,* 847 F.Supp. 61, 63 (S.D.Tex.1994); *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461 (1987). Section 403 of the Restatement (Third) of the Foreign Relations Law of the United States sets forth a number of factors to be considered in determining whether the comity of nations deference should be applied. These factors are as follows: (a) the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory; (b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity regulated, or between that state and those whom the regulation is designed to protect;

(c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted; (d) the existence of justified expectations that might be protected or hurt by the regulation; (e) the importance of the regulation to the international political, legal, or economic system; (f) the extent to which the regulation is consistent with the traditions of the international system; (g) the extent to which another state may have an interest in regulating the activity; and (h) the likelihood of conflict with regulation by another state. Restatement (Third) of Foreign Relations, § 403(2).

The Court in *Sequihua v. Texaco, Inc.,* 847 F.Supp. 61 (S.D.Tex.1994), analyzed these factors in a case substantially similar to the case at Bar. The plaintiffs in *Sequihua* were citizens of Ecuador who alleged that petroleum development in that nation had resulted in pollution injuring a large class of local inhabitants. The government of Ecuador regulated development of its natural resources and protested the exercise of jurisdiction by a United States court. The plaintiffs in *Sequihua,* as in this case, sought damages, made claims of nuisance and requested equitable relief. *Id.* at 62–63. In dismissing the case on the basis of comity, the *Sequihua* court stated:

> Consideration of [§ 403 of the Restatement of Foreign Relations] factors leads to the inescapable conclusion that the Court should decline to exercise jurisdiction over this case. The challenged activity and the alleged harm occurred entirely in Ecuador; Plaintiffs are all residents of Ecuador; Defendants are not residents of Texas; enforcement in Ecuador of any judgment issued by this Court is questionable at best; the challenged conduct is regulated by the Republic of Ecuador and exercise of jurisdiction by this Court would interfere with Ecuador's sovereign right to control its own environment and resources; and the Republic of Ecuador has expressed its strenuous objection to the exercise of jurisdiction by this Court. Indeed, none of the factors favor jurisdiction. Accordingly, the

case should be dismissed under the doctrine of comity of nations.

*Sequihua,* 847 F.Supp. at 63.

■ The Court finds the above analysis similarly applicable in this case. The challenged activity and the alleged harm occurred entirely in Peru; Plaintiffs are all residents of Peru; enforcement in Peru of any judgment rendered by this Court is questionable; the challenged conduct is regulated by the Republic of Peru and exercise of jurisdiction by this Court would interfere with Peru's sovereign right to control its own environment and resources; and the Republic of Peru has expressed strenuous objection to the exercise of jurisdiction by this Court. This Court therefore dismisses this action under the doctrine of comity of nations.

## IV. CONCLUSION

For the above stated reasons this action is hereby DISMISSED under the doctrines of comity of nations and *forum non conveniens.* The Court conditions its dismissal under *forum non conveniens* on the following: (1) that Defendants either waive or accept service of process and waive any other jurisdictional defense within 40 days after entry of this Order in any action commenced by Plaintiffs in Peru. Any Plaintiff desiring to do so shall bring such an action within 30 days after entry of this Order; (2) that Defendants waive within 40 days after entry of this Order any limitations-based defense that has matured since the commencement of these actions in the courts of Texas; (3) that Defendants submit within 40 days after entry of this Order an agreement binding them to satisfy any final judgment rendered in favor of Plaintiffs by a Peruvian court. Any objections of Plaintiffs concerning the waivers, stipulations, and agreements of Defendants pursuant to subparagraphs (1), (2) or (3) shall be filed within 50 days after the entry of this Order. Any reply to such objections shall be filed within 60 days of the entry of this Order. IT IS SO ORDERED.