OWENS–ILLINOIS, INC., et
al., Appellants,

v.

Marilyn Rose WEBB, et al., Appellees.

No. 6–90–085–CV.

Court of Appeals of Texas,
Texarkana.

April 9, 1991.

Rehearing Overruled May 14, 1991.

Second Rehearing Overruled
July 9, 1991.

Greg Bevel, DeHay & Blanchard, Dallas, Dennis Chambers, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Larry D. Carlson, Baker & Botts, Luke Ashley, Thompson & Knight, D. Mark Davis, Bailey and Williams, Dallas, Gene M. Williams, Mehaffy & Weber, Beaumont, for appellants.

Scott Baldwin, Jr., Baldwin & Baldwin, Marshall, William W. Kilgarlin, Austin, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Owens–Illinois, et al, appeals from a temporary injunction obtained by Marilyn Rose Webb, et al,[1] in order to prevent Owens–Illinois from pursuing an injunction in a Canadian court. A single question is presented for review. Did the district court abuse its discretion by enjoining the appellants from pursuing an injunction in a foreign court which would prohibit the appellees from pursuing their Texas action? In short, we are dealing with an anti-anti-suit proceeding.

The underlying personal injury asbestosis suit was filed in the 71st District Court in Marshall, Texas, on July 29, 1988. The plaintiffs are 216 Canadian citizens: 98 residents of British Columbia, 79 residents of Alberta, 37 residents of Manitoba and 2 residents of New Brunswick. All of these plaintiffs are appellees in this appeal except for the 98 residents of British Columbia. The defendants (appellants) are numerous corporate manufacturers and distributors of asbestos products. All damages were alleged to have occurred in Canada. Appellants have made various jurisdictional and venue challenges, each of which failed.

On November 10, 1989, the Texas defendants began a proceeding in a trial court of

British Columbia seeking to enjoin the British Columbian plaintiffs in the Texas action from pursuing their personal injury claims in a Texas court. The Canadian trial court granted the requested injunction on December 6, 1989, and the British Columbia Court of Appeals affirmed this action (as to all 98 British Columbian plaintiffs) by written opinion on November 5, 1990.

During this time (on November 20, 1989), appellees' counsel obtained a temporary restraining order from the Texas district court restraining the appellants from seeking similar injunctions in the other Canadian provinces. Immediately after the rendition of an opinion by the British Columbia trial court, on December 7, 1989, appellees' counsel withdrew his application for an injunction in the Texas court, and he agreed to a stay in the Texas trial court pending final resolution of the British Columbia appeal. He also requested that appellants not pursue similar anti-suit injunctions in the other Canadian provinces during the appeal. Appellants complied with this request.

On the day that the British Columbia Court of Appeals rendered judgment against the British Columbian plaintiffs, appellees' counsel obtained an *ex parte* temporary restraining order from the Texas district court. The order prevented appellants from seeking similar injunctions in the Canadian courts of the provinces in which the remaining parties resided. After a hearing on November 19, 1990, the Texas court granted a temporary injunction prohibiting the appellants from bringing an action in Canada to enjoin the appellees from proceeding with their Texas action. Appellants' appeal challenges this order.

On appeal from the entry of a temporary injunction, the sole question for determination by this Court is whether the trial court abused its discretion by issuing the temporary injunction. *See Iranian Muslim Organization v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981). The

1. There are 32 appellants and 118 appellees.

test for abuse of discretion is not whether, in the opinion of the reviewing court, the factors present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators,* 701 S.W.2d 238 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

This is not a case concerning jurisdiction. Both Canadian courts and Texas courts would have jurisdiction of the underlying suits. The natural forum would be Canada because the circumstances that gave rise to the suit occurred in Canada, and the plaintiffs are citizens of Canada; however, while the natural forum is a major consideration under the doctrine of *forum non conveniens,* the Supreme Court of Texas has ruled that the doctrine is not applicable to this type of proceeding. *Dow Chemical Co. v. Castro Alfaro,* 786 S.W.2d 674, 688 (Tex.1990).

The appellants contend in a supplemental brief that the real party in interest in these proceedings are the provincial workers' compensation boards. The workers' compensation boards are entitled to seek subrogation of the amounts paid in workers' compensation in any settlement or award obtained against third parties. This, however, has no bearing on the outcome of this proceeding.

Appellants have also urged the unfairness of applying Texas law instead of Canadian law. That issue is not before this Court at this time. Section 71.031(c) of the Texas Civil Practice and Remedies Code requires that the court shall apply the rules of substantive law that are appropriate under the facts of the case. TEX.CIV.PRAC. & REM. CODE ANN. 71.031(c) (Vernon 1986). The Texas Supreme Court in *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979), has ruled that all conflict cases sounding in tort will be governed by the "most significant relationship" test as enunciated in the American Law Institute's *Restatement (Second) of Conflicts.* The trial court will

determine the appropriate law to be applied.

■ The doctrine of *forum non conveniens* gives discretionary power to the court to decline jurisdiction when convenience of parties and ends of justice would be better served if the action were brought and tried in another forum. This doctrine does not apply because it has been statutorily abolished for wrongful death and personal injury actions arising out of an incident in a foreign state or country. *Dow Chemical Co. v. Castro Alfaro,* 786 S.W.2d 674; TEX.CIV.PRAC. & REM. CODE ANN. § 71.031(a) (Vernon 1986). According to the Supreme Court ruling in the *Dow Chemical* case, the trial court no longer has a right to decline jurisdiction in wrongful death and personal injury action arising out of an incident in a foreign state or country.

■ As the present case involves two sovereigns with concurrent jurisdiction to decide the controversy, the principle of comity requires that the trial court exercise its equitable power sparingly and only in very special circumstances. *Gannon v. Payne,* 706 S.W.2d 304, 306 (Tex.1986). "Comity," in the legal sense, has been defined as neither a matter of absolute obligation, nor a matter of mere courtesy and good will. It is, however, the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1894); *see also Nowell v. Nowell,* 408 S.W.2d 550, 553 (Tex. Civ.App.–Dallas 1966, writ dism'd), *as cited in* BLACK'S LAW DICTIONARY 267 (6th ed. 1990).

In the case of *Gannon v. Payne,* 706 S.W.2d 304, the Supreme Court held that the trial court abused its discretion in granting an anti-suit injunction involving the two sovereigns, Texas and Canada.

The facts in the present case differ in two significant aspects from the facts in *Gannon:*

(1) In the *Gannon* case, the trial court had enjoined a Canadian citizen from bringing an action in Canada. In the present case, the trial court enjoined Texas resident corporations [2] from bringing a suit in Canada to enjoin Canadian citizens from bringing their action in Texas.

(2) In *Gannon*, the matter had already been litigated in Canada, and the Canadian citizen was asking for a declaratory judgment based upon the prior judgment. In the present case, not only has the matter not been litigated in Canada, there is no parallel suit pending,[3] nor is there any pending litigation at any stage of the proceeding in Canada on the substance of this litigation.

There are no precise guidelines for determining the appropriateness of an anti-suit injunction or for deciding whether comity should be invoked. The circumstances of each situation must be carefully examined to determine whether the injunction is required to prevent an irreparable miscarriage of justice. *Gannon v. Payne*, 706 S.W.2d at 307. Anti-suit injunctions have been issued by courts (1) to protect their own jurisdiction, (2) to prevent evasion of important public policies of the forum nation, (3) to prevent a multiplicity of suits, or (4) to protect a party from vexation or harassing litigation.

In the present case, it appears that the Texas trial court granted the injunction for the purpose of protecting its own jurisdiction, i.e., if the appellants were allowed to enjoin the appellees in a Canadian action from further proceedings, the Texas court would lose its ability to proceed with the case.[4] A Texas court can enjoin its residents, be they corporate or individual, from seeking to enjoin the Texas court from proceeding with litigation over which it has jurisdiction. We do not find an abuse of discretion by the Texas trial court in protecting its jurisdiction under these circumstances.

■ Appellants next contend that the trial court abused its discretion by granting equitable relief to a party which did not come into court with clean hands. Before a party may seek an equitable remedy, that party must come before the court with clean hands. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960). Appellants argue that they relied on the representations in a letter sent by appellees' counsel requesting that appellants not institute similar proceedings in the other provinces because the stay of proceedings which he was about to request would make such an action unnecessary. Without moving that the indefinite stay be lifted or modified, counsel then obtained a temporary restraining order *ex parte* on the date that the appellate decision was rendered. Appellants contend that this action violates the spirit of the *Texas Lawyer's Creed—A*

**2.** Even if these corporations are chartered in other states, a corporation doing business in Texas is treated as a resident. *PPG Industries v. Continental Oil Co.,* 492 S.W.2d 297 (Tex.Civ. App.–Houston [1st Dist.] 1973, writ ref'd n.r.e.).

**3.** The injunction action in British Columbia initially requested a punitive damage award, but this request was struck by the court.

**4.** The trial court order reads as follows:
"It is the opinion of this Court that the Defendants intend to enforce injunctive and/or restrictive relief in Alberta, Manitoba and New Brunswick against these Plaintiffs as soon as possible and before the Court can render judg-

ment in this cause; that if said Defendants carry out this intention, they will thereby alter the status quo intent to make ineffectual a judgment in favor of Plaintiffs and that Defendants are about to perform acts which violate the rights of the Plaintiffs to pursue their cause of action in a state court of Texas in direct conflict with Texas law; and that unless Defendants are deterred from carrying out that intention, Plaintiffs will be without any adequate remedy at law to pursue their cause of action in the Texas state courts for injuries they have sustained as a result of Defendants' defective products."

*Mandate for Professionalism* III, 7,[5] and that equitable relief should not have been granted because appellees did not have clean hands.

■ We have examined the letter to appellants' counsel.

The pertinent portion reads as follows:

Further, I intend to move the Court in Texas to stay all proceedings in the *Webb* case until the British Columbia Court of Appeal hears our appeal of the decision of The Honourable The Chief Justice. Since I am taking the step of moving to stay all cases, including those from Alberta, Manitoba and New Brunswick, I would request that the asbestos companies take no further action at this time in those provinces. Given a stay of all cases, I do not believe any such action would be necessary.

In any event, Scott Baldwin will move for a stay of all cases up to and including February 15, 1990, pending resolution of these matters by the British Columbia courts. If necessary, the stay will be extended.

Although the language appears to have been chosen to discourage them from pursuing similar injunctions in the Canadian provinces other than British Columbia, it does not extend beyond the resolution of the appeal process in British Columbia. Counsel apparently filed a motion for (and received) a temporary restraining order within hours after the rendition of the decision of the British Columbia Court of Appeals. Although counsel's action was abrupt, it could have been expected, and does not violate the specific terms of his communication. Under these circumstances, we cannot say that the clean hands doctrine applies. This contention is overruled. Appellants also contend that the district court's anti-anti-suit injunction erroneously covers three plaintiffs who are actually

subject to the British Columbia court's anti-suit injunction. In their brief, appellees agree that this inclusion was erroneous as to these plaintiffs and state that this defect has been corrected. We assume that it has been corrected, but if it has not, we instruct the trial court to make the necessary corrections.

We have concluded that the trial court did not abuse its discretion by granting the temporary injunction. The order of the trial court is affirmed.

## ON REHEARING

On rehearing, the appellants contend that this Court's opinion and holding violates five fundamental legal principles:

(1) The established Texas principle of statutory construction that courts should adopt a reasonable construction that will avoid a conflict and leave two potentially conflicting laws in effect;

(2) The recognized principle of international law that accords a sovereign power the right to control the conduct of its own nationals outside its territorial boundaries;

(3) The recognized principle of international law that among the fundamental rights of a sovereign state or nation is the right to control when, where, and how its own nationals pursue legal remedies;

(4) The general Texas rule that "statutes of a state *ex proprio vigore* have no extraterritorial effect"; and

(5) The established principle of Texas law that Texas courts should scrupulously adhere to principles of international comity when the other sovereign involved is a foreign nation.

The appellants have predicated their arguments on the basic premise that the Texas trial court entered an injunction to prohibit the Canadian courts from doing cer-

---

**5.** *Texas Lawyer's Creed—A Mandate for Professionalism* III, 7, states as follows: "I will not serve motions or pleadings in any manner that

unfairly limits another party's opportunity to respond."

**904**

tain acts. This basic premise is incorrect. The Texas trial court has not enjoined or prohibited the Canadian courts from doing anything. The Texas trial court enjoined its corporate citizens from taking certain actions in Canada that would have deprived the Texas trial court of its jurisdiction over a pending proceeding.

■ Under appellants' contention that this Court violated the rules of statutory construction, the appellants cite *City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17 (Tex.1990); *Standard v. Sadler*, 383 S.W.2d 391 (Tex.1964); and *Lopez v. State*, 756 S.W.2d 49 (Tex.App.– Houston [1st Dist.] 1988, pet. ref'd). These cases deal with statutory construction when two laws of Texas are in conflict with each other. The courts are to harmonize the different statutes of this State whenever possible so as to give effect to both enactments. *Standard*, 383 S.W.2d at 395. This is based upon the presumption that the Legislature did not intend to pass conflicting laws, but this is not a principle that must be applied between the laws of two different states or nations. When members of the Texas Legislature or Congress pass legislation, they are not concerned with whether the law is in harmony with all the laws of a foreign country, nor should they be. When a controversy involving two or more jurisdictions arises, the body of law generally referred to as "conflict of laws" is applied to determine which law or system is to govern in the particular case. As we stated in the original opinion, the trial court has not reached the point of determining what substantive laws will be applicable to this case.

In the next two points, the appellants urge that a sovereign power has the right to control the conduct of its own nationals outside its territorial boundary. That is exactly what our holding recognizes: the right of the State of Texas to control its own corporate citizens outside its territorial boundaries. This right was recognized by the United States Supreme Court in *Steel v. Bulova Watch Co.*, 344 U.S. 280, 73 S.Ct.

252, 97 L.Ed. 319 (1952). Restatement (Third) of Foreign Relations Law of the United States § 402 (1987) provides that,

> Subject to § 403, a state has jurisdiction to prescribe law with respect to ... the activities, interests, status, or relations of its nationals outside as well as within its territory.

The limitation expressed in Section 403 is that a state may not exercise its jurisdiction to prescribe law with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable. The exercise of jurisdiction in the present case is not unreasonable under the standards set out in Section 403(2).

For the next principle, the appellants contend that statutes of a state *ex proprio vigore* (by their or its own force) have no extraterritorial effect, *citing State of California v. Copus*, 309 S.W.2d 227, 229 (Tex. 1958). In the *Copus* case, the Supreme Court held that the Texas trial court had jurisdiction to enforce an action that occurred while the defendant was a citizen of California. Again, this rule deals with what substantive laws will be applied by the Texas court and must be decided with due regard for the current statutes and the appropriate conflict of law principles.

■ The last principle that the appellants contend was violated was a failure to adhere scrupulously to the principles of international comity, *citing Gannon v. Payne*, 706 S.W.2d 304 (Tex.1986). In *Gannon*, the Supreme Court declared that the policy of allowing parallel court proceedings to continue simultaneously requires scrupulous adherence. The court invoked the doctrine of comity in holding that the Texas trial court could not issue an injunction prohibiting a foreign citizen from prosecuting an action in his home country. In *Gannon*, the Supreme Court pointed out that there was no evidence that the Canadian court had attempted to carve out exclusive jurisdiction in the case. In companion cases, the Canadian court has

 

attempted to carve out exclusive jurisdiction by enjoining further proceedings on the substantive case in the State of Texas, and there is good reason to believe that the appellees being similarly situated in the present case would be treated the same way. The rule of international comity does not require that our courts roll over and play dead because another jurisdiction wishes us to do so. We have pointed out the material difference between the present case and *Gannon*. Our ruling does not violate fundamental legal principle, but rather, it applies them.

The motion for rehearing is overruled.