# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-41021

PERFORACIONES EXPLORACIÓN Y PRODUCCIÓN, also known as
Protexa; CERTAIN REINSURING UNDERWRITERS, Subscribing to
Reinsurance Contract No. AHE-03004 As Amended to No. AHE-04004

Plaintiffs-Appellees

v.

MARÍTIMAS MEXICANAS, S.A. DE C.V., also known as MarMex

Defendant-Appellant

Appeal from the United States District Court for the
Southern District of Texas, Galveston Division
USDC No. 05-CV-00419

Before BENAVIDES, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellant Marítimas Mexicanas, S.A. de C.V. ("MarMex") appeals from
several rulings in favor of Appellee Perforaciones Marítimas Mexicanas
("Protexa") in an ongoing case concerning an allision between two vessels in the
Gulf of Campeche, off the Mexican coast. For the reasons described below, we
affirm the district court and remand to allow trial to proceed on the scope of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

damages awardable to Appellees.

I.

On March 31, 2004, a supply vessel, the M/V ISLA AZTECA (the "ISLA AZTECA"), allided with a mobile operating drilling unit, the MODU/TOTONACA (the "TOTONACA"), in the Bay of Campeche, approximately 45 miles off the Mexican coast. The ISLA AZTECA allegedly damaged the TOTONACA as a result of their allision. At the time of the accident, MarMex owned and operated the ISLA AZTECA, and Protexa owned the TOTONACA. Both MarMex and Protexa are Mexican entities, and both the ISLA AZTECA and the TOTONACA were Mexican flagged vessels on the date of the allision. The allision occurred beyond Mexican territorial waters but within Mexico's exclusive economic zone ("EEZ"). Under the United Nations Convention on the Law of the Sea ("UNCLOS"), Mexico does not exercise full sovereignty over its EEZ, but rather has certain "sovereign rights" within the zone, including control over the economic exploitation and environmental protection of the sea's natural resources. *See* UNCLOS art. 56, Dec. 10, 1982, 1833 U.N.T.S. 397; 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW § 2-16 (4th ed. 2004).[1]

Shortly after the allision, MarMex commenced a limitation action in Mexico under the Convention on Limitation of Liability for Maritime Claims (the "1976 Convention"), Nov. 19, 1976, 1456 U.N.T.S. 221, as codified in the Mexican Law of Navigation, and posted a bond of $427,460.97 to satisfy any claims arising out of the allision. Commencing a limitation action allows shipowners to avoid catastrophic liability for accidents at sea involving their vessels, capping

---

[1] The United States has been a UNCLOS signatory for nearly three decades, but the Senate has not yet ratified the treaty. Nevertheless, the United States has declared that the provisions of UNCLOS establishing EEZs are declarative of customary international law. *See Mayaguezanos por la Salud y el Ambiente v. United States*, 198 F.3d 297, 304 n.14 (1st Cir. 1999).

potential damages based on some measure of the value of their ship and bringing multiple claimants into a single action. 2 SCHOENBAUM, *supra*, § 15-1. The United States is not party to the 1976 Convention, *id.*, but rather has its own Limitation of Liability Act, codified at 46 U.S.C. §§ 30501–30512 (2006). To date, Protexa has not filed a claim against MarMex in the Mexican limitation proceeding.

On July 28, 2005, Protexa[2] and its insurance underwriters filed suit against MarMex in federal district court in Galveston, Texas, attempting to hold MarMex liable for the alleged damage to the TOTONACA. MarMex eventually filed a motion to dismiss Protexa's suit on grounds of lack of subject matter jurisdiction, forum non conveniens, and international comity, but the district court denied the motion and allowed this case to proceed in the United States. Subsequently, the district court performed a conflicts of law analysis and ruled that Mexican substantive law, specifically Article 1913 of the Mexican Civil Code, would apply to the case, but also held that the limits to recovery established by the 1976 Convention were procedural and therefore were inapplicable in U.S. court.

For trial, the district court bifurcated the trial between liability and damages to allow the Fifth Circuit to provide guidance to the court before addressing damages. After a brief bench trial during which MarMex stipulated that the ISLA AZTECA had allided with the TOTONACA, the district court found that MarMex was liable to Protexa for the allision.

On appeal, MarMex asserts that this case should be dismissed for lack of subject matter jurisdiction, forum non conveniens, and international comity. It

---

[2] Perforaciones Exploración y Producción ("PEP"), an affiliate of Protexa, initially filed suit against MarMex. However, when it became clear that Protexa was the real party in interest, and not PEP, the district court granted leave for the plaintiffs to amend their complaint, substituting Protexa for PEP.

also argues that the district court erred when it concluded that the 1976 Convention is procedural and consequently may not be used to limit MarMex's liability in this case. We address these issues in turn.

## II.

Whether a district court possesses subject matter jurisdiction is a question of law, reviewed de novo on appeal. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008). 28 U.S.C. § 1333(1) provides that "[t]he district courts shall have original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . ." We determine that the district court does have subject matter jurisdiction under section 1333 to resolve this dispute.

MarMex contends that subject matter jurisdiction under section 1333(1) cannot reach an allision that occurred in Mexico's EEZ, relying primarily on *Victory Carriers, Inc. v. Law*, 404 U.S. 202 (1971). In *Victory Carriers*, the Supreme Court stated that "the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and . . . maritime law governs only those torts occurring on the *navigable waters of the United States*." *Id*. at 205 (emphasis added). However, the weight of authority, including the precedent of the Supreme Court, supports the view that there are no clear territorial limits to federal maritime tort jurisdiction. *See, e.g., Panama R. Co. v. Napier Shipping Co.*, 166 U.S. 280, 285 (1897) ("[T]he law is entirely well settled . . . that torts originating within the waters of a foreign power may be the subject of a suit in a domestic court."); *Malay. Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 355-56 (3d Cir. 2006) (seizure of ship at Chinese port establishes admiralty jurisdiction), *rev'd on other grounds*, 549 U.S. 422 (2007); *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1117-19 (5th Cir. 1995) (finding admiralty jurisdiction over tort in territorial waters of United Arab Emirates); *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307, 311 (5th Cir. 1987) (finding that "admiralty jurisdiction over claims by Singapore plaintiffs on an alleged tort in Singapore"

is "undoubted"), *rev'd on other grounds*, 486 U.S. 140 (1988). Consequently, we find MarMex's reliance on *Victory Carriers* to be unfounded. The statement in *Victory Carriers* appearing to limit jurisdiction to the navigable waters of the United States is dicta. *Victory Carriers* concerned whether jurisdiction under section 1333(1) reached an accident that occurred on a pier in Alabama, and did not address whether jurisdiction reaches the high seas or waters under the control of a foreign state. 404 U.S. at 203-04.

MarMex also argues that even if these cases are controlling, there can be no admiralty jurisdiction over maritime collisions unless the parties or their dispute have some clear link to the United States. While the strength of a case's ties to the United States are clearly relevant for a forum non conveniens or choice of law analysis, it does not impact whether a court has admiralty jurisdiction under section 1333(1). *See Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 177-78 (3d Cir. 1995); *Kim v. Frank Mohn A/S*, 909 F. Supp. 474, 476-77 (S.D. Tex. 1995). Consequently, we are confident there is subject matter jurisdiction over the allision of the TOTONACA and the ISLA AZTECA.

## III.

Even if there is jurisdiction, as in this case, dismissal may still be appropriate under the doctrine of forum non conveniens. However, "[t]he forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a *clear abuse of discretion*; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Karim v. Finch Shipping Co.*, 265 F.3d 258, 268 (5th Cir. 2001) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

Courts considering dismissal for forum non conveniens must carry out a two-step test. First, the defendant seeking dismissal must establish that there is an alternate forum that is both available and adequate. *McLennan v. Am.*

*Eurocopter Corp., Inc.*, 245 F.3d 403, 424 (5th Cir. 2001). Since the parties do not seriously contest the availability and adequacy of the Mexican limitation action on appeal, we proceed to the next step. Second, the defendant must demonstrate that "private and public interests weigh *heavily* on the side of trial in the foreign forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir. 1987) (emphasis added), *vacated*, *Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 103 (1989), *reinstated in pertinent part*, 883 F.2d 17 (5th Cir.1989).[3] "A defendant . . . bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum. This burden of persuasion runs to all the elements of the forum non conveniens analysis." *Id.* (internal citations removed).

Although we might well not reach the same conclusion under de novo review, since the district court's refusal to dismiss this case resulted from "an exercise in structured discretion founded on a procedural framework," it is not a clear abuse of discretion. *Id.* at 1165. With regard to private interests, MarMex asserts that this case would be better litigated in Mexico because certain Spanish language documents remain untranslated and because it cannot access certain evidence regarding the repairs made to the TOTONACA after the

---

[3]    The private interest factors to be weighed include

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive; enforceability of judgment; and whether the plaintiff has sought to vex, harass, or oppress the defendant.

*Karim*, 265 F.3d at 269 n.14 (quotation marks and brackets omitted). The public interest factors include

the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial . . . in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Air Crash Disaster*, 821 F.2d at 1162-63.

allision. However, in the district court's analysis, it considered that certain evidence might be inaccessible if this case were to proceed in the United States and it also assumed that certain documents had not yet been translated. It simply found that these concerns were outweighed by other factors, such as the delay that would accompany dismissal, the relative proximity of Galveston to the site of the accident, the completed translation of other documents, and the availability of many witnesses.

With regard to public interests, the district court concluded that Mexico has an interest in resolving this dispute in its courts, but again, found this to be outweighed by other public interest factors, as it concluded that this case would not overburden its docket and that a jury trial would not be necessary. We do note that the district court based its public interest analysis on the assumption that U.S. substantive law would apply in this case, an assumption that later proved to be unfounded. However, a district court need not conduct a conflicts of law analysis before ruling on forum non conveniens, *id*. at 1163 n.25, and as a result, we can hardly condemn this mistake. We conclude that the application of Mexican substantive law in this case does not undermine the district court's entire analysis, especially under this deferential standard of review.

The advanced stage of these proceedings also affects our review of the district court's decision to retain this case, as "[t]he fact that a trial on the merits has occurred in the plaintiff's selected forum does have some effect on our decision of whether the district court abused its discretion in maintaining the action before it." *Id*. at 1167. Although the trial in this case has not yet reached the damages stage, MarMex has already been found liable to Protexa. Moreover, this litigation has now proceeded in our courts for more than four years, and its resolution is finally in sight. MarMex has not demonstrated that it would be "greatly prejudiced" if trial were to go forward in this country on damages. *Id*. at 1168. Although some evidence concerning the cost of the repairs to the

TOTONACA may be unavailable in this country, MarMex has not proven that this evidence would be any more available if this case were to proceed in Mexico. Additionally, since the district court denied MarMex's motion to dismiss in 2006, new evidence has come to light suggesting that Galveston may be a more convenient forum than it initially appeared:  MarMex conducts some business in the United States, and the ISLA AZTECA has called on U.S. ports from time to time.  Given these considerations, since the district court weighed all relevant factors, and we do not find its analysis unreasonable, we find that the district court did not abuse its discretion by denying a forum non conveniens dismissal.

IV.

MarMex also contends that the district court erred when it did not dismiss Protexa's suit out of respect for international comity.  A district court's decision to exercise or decline jurisdiction in the face of possible international comity concerns is reviewed for abuse of discretion.  *Seguros Del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 1164, 1169 (11th Cir. 2001); *Jota v. Texaco, Inc.*, 157 F.3d 153, 160 (2d Cir. 1998).  We conclude the district court did not abuse its discretion.

Comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."  *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).  Dismissal of a suit on international comity grounds may sometimes be appropriate when there is litigation pending in a foreign forum or, even absent such litigation, when allowing a case to proceed in the United States would intrude on the interests of a foreign government.  *See Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004).

MarMex relies on *Sequihua v. Texaco, Inc.* to suggest that this case should be dismissed out of deference to Mexican interests.  847 F. Supp. 61 (S.D. Tex.

1994).  However, this case is readily distinguishable from *Sequihua*, where a district court dismissed a suit alleging pollution affecting a third of Ecuadorian territory after Ecuador had "expressed its strenuous objection to the exercise of jurisdiction." *Id*. at 63.  Mexico has remained silent in this case, and while the TOTONACA was engaged in oil exploration at the time of the allision, it is unclear how the resolution of this private dispute by a U.S. court would impede Mexico's ability to exercise its sovereign rights over economic exploitation within its EEZ.  *See* UNCLOS art. 56, *supra*.[4]

Additionally, MarMex has failed to cite any case where a U.S. court has deferred to a foreign limitation proceeding on international comity grounds. Limitation proceedings commenced under U.S. law only receive domestic recognition, *Otal Invs. Ltd. v. M.V. Clary*, 494 F.3d 40, 63 (2d Cir. 2007); *Matter of Bowoon Sangsa Co.*, 720 F.2d 595, 599 (9th Cir. 1983) *(*"Because a decree in limitation normally receives only domestic recognition, 'the courts of each country will apply local law on the question of limitation; no country will give effect to a foreign limitation decree as barring further suit.'" (internal brackets removed) (quoting GRANT GILMORE & CHARLES BLACK, THE LAW OF ADMIRALTY 945 (2d ed. 1975))), and although the 1976 Convention requires its signatories to defer to certain limitation proceedings abroad, the United States has not adopted the Convention.  2 SCHOENBAUM, *supra*, § 15-1 n.7.  Given these considerations, the district court's decision not to defer to the Mexican limitation

---

[4]     We note that *Sequihua* is inapposite in this case for another reason.  In *Sequihua*, the district court relied on section 403 of the Restatement (Third) of the Foreign Relations Law of the United States to guide its analysis.  847 F. Supp. at 63.  However, section 403 is not relevant to MarMex and Protexa's private law dispute, as section 403 concerns prescriptive jurisdiction, the authority of the United States to make its *public* law applicable extraterritorially.  *See* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES pt. IV, ch. 1, subch. A introductory note ("[Section 403] concentrates on so-called public law—tax, antitrust, securities regulation, labor law, and similar legislation. . . .  [T]he rules stated in [Section 403] do not necessarily apply to controversies unrelated to public law issues.").

proceeding on comity grounds does not rise to being an abuse of discretion.[5]

## V.

Finally, MarMex asserts that the district court erred in determining that the limits on liability established by the 1976 Convention and codified in Mexican law are procedural and thus cannot be applied in United States court. "This Court reviews questions of law, including conflicts of law questions, *de novo*." *Cantu v. Jackson Nat'l Life Ins. Co.*, 579 F.3d 434, 437 (5th Cir. 2009) (quoting *Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 611 (5th Cir.2006)). Similarly, determinations of foreign law are reviewed de novo on appeal, and courts may consider information from any relevant source, including information not considered by the district court. *See* Fed. R. Civ. P. 44.1; *Grupo Protexa, S.A. v. All Am. Marine Slip*, 20 F.3d 1224, 1239 (5th Cir. 1994).

The leading case on conflicts of law in this area is *Black Diamond S.S. Corp. v. Robert Stewart & Sons, Ltd. (The Norwalk Victory)*, 336 U.S. 386 (1949). In *The Norwalk Victory*, the Supreme Court held that U.S. courts may apply a foreign limit on liability, but only when the limit is substantive and "attaches" to the right of recovery created by foreign law, as opposed to merely "provid[ing] procedural machinery by which claims otherwise created are . . . scaled down to their proportionate share of a limited fund." *Id.* at 396. MarMex argues that we should perform a "policy-based conflicts analysis" to determine which liability limit applies in this case, relying on a reading of *The Norwalk Victory* advanced in *Complaint of K.S. Line Corp.*, 596 F. Supp. 1268, 1270-72, 1274 (D. Alaska 1984). However, we have never adopted such an approach, finding instead that "United States courts 'must apply foreign limitation law if the substantive liability of the parties is governed by a foreign law *and* if the limitation law of

---

[5] We do not mean to suggest that a district court could not properly exercise its discretion to dismiss a case under forum non conveniens when a party has commenced a foreign limitation action.

the foreign country is such an integral part of the substantive law governing the action that it can be said to 'attach' to the substantive liability law.'" *Karim*, 265 F.3d at 270 (quoting *In re Korea Shipping Corp.*, 919 F.2d 601, 604-05 (9th Cir. 1990)). In other words, the term "substantive" is a term of art, referring to how integral a cap on liability is to a cause of action. *Korea Shipping Corp.*, 919 F.2d at 605.

We conclude that the cap on liability created by the 1976 Convention does not attach to the right of recovery created by Article 1913 of the Mexican Civil Code. The 1976 Convention does not create a right of recovery, but only limits the recovery available under Article 1913 and other sources of liability. *See* 1976 Convention art. 2, *supra*, 1456 U.N.T.S. at 223 ("[T]he following claims, *whatever the basis of liability may be*, shall be subject to limitation of liability . . . ." (emphasis added)). We find the reasoning in *Matter of Bethlehem Steel Corp.* persuasive, where a district court held that a cap on liability established by the Canada Shipping Act should not be applied in U.S. court, as the cap did not "limit the individual claimant's right to recover certain categories of damages," but instead served "only to measure or quantify damages." 435 F. Supp. 944, 948 (N.D. Ohio 1976); *aff'd*, 631 F.2d 441 (6th Cir. 1980). Additionally, the cap on liability established by the 1976 Convention is not "substantive" because it is not so integral as to follow liability under Article 1913 in all maritime cases, as an absolute cap on recovery would. The 1976 Convention provides only that "[l]imitation of liability *may* be invoked" by a shipowner, not that it must be applied by a court as an absolute limit to liability. 1976 Convention art. 10, *supra*, 1456 U.N.T.S. at 227 (emphasis added). As a result, the limits established by the 1976 Convention are not substantive—liability under Article 1913 in a maritime case could exceed the cap established by the 1976 Convention. *Cf. The Norwalk Victory*, 336 U.S. at 395 (suggesting that "if it is the law of Belgium that the wrong creates no greater liability than that

recognized by the Convention of 1924," then the Convention's limit on liability would be substantive). The district court did not err in finding the Mexican limit on liability inapplicable in this case.

## VI.

For the foregoing reasons, the district court is AFFIRMED and this case is REMANDED to allow trial to proceed on damages.