Opinion issued October 28, 2014



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-13-00310-CV

---

**RENATO ACAIN, RANDY AGOSTO, EFREN ALIVIANO, ARTEMIO ANZALE, GREG BA-ANG, JEFFREY BATAC, FERDINAND BELLIDO, DENNIS BICERA, VERGINIO BOLAMBOT, ANATALIO CAANG, ROMEO CANDILADA, ARNEL CASTANEDA, LIEZELLITO CLORIBEL, LEONILO COLINA, ARTURO CONCLARA, ELLESER CRISTOBAL, LUDOVICO DEFACTO, JORGE DENAQUE, ELMER DOMINGO, SIMEON DOMINGO, AARON ESTRERA, FELIX EDUARDO, ALFREDO FARINA, CARLITO FIDEL, JAYGEN GENON, FELIPE GUTIB, ALLAN GUILLARTES, EDITO LAURITO, GILBERTO LAURIQUEZ, EDGAR LEONOR, CAMILO LUMAGSAO, JOHNNY MACARAIG, NICASIO MANGILIMOTAN, GABINO LABADLABAD, LADISLAO MELGAR, BENJAMIN NAGUE, SERGIO NATAD, ZOSIMO OLIMBA, NILO PALAMILLO, ALEJANDRO PANTALITA, EDUARDO PATUPAT, BIENVENIDO PERALTA, HERMOGENES PUNZALAN, ANTONIO REDOLOZA, ALFREDO ROSALES, FELICIANO SANTOS, ALEJANDRO SANTIZAS, GIOVANNE SARAMOSING, FLORENTINO SAYAGO, FELIPE SIAPNO, ROSELLIER SOMOZA, ROY TALLEDO, LARRY URBANO, BENJAMIN VILLEJO, BALTAZAR VILLEJO, AND**

**FRANKLIN VILLAREAL,  Appellants**

**V.**

**INTERNATIONAL PLANT SERVICES, LLC, NOUREDDINE AYED, KARIM AYED, RICHARD DALE JOHNSTON, ADRIENNE WILSON, AND LEYSANDER BUSTAMONTE, Appellees**

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-32519**

---

## O P I N I O N   O N   R E H E A R I N G

Fifty-seven Filipino former employees of International Plant Services, LLC (IPS), a Texas company, sued IPS, MBC Human Resources Development Corporation (the Filipino agency that recruited them to work for IPS in Texas), and various individual defendants who owned or worked for IPS and MBC, alleging that they had been subjected to human trafficking by the defendants, and asserting various tort and contract claims arising out of their employment with IPS.  The defendants moved to dismiss the case based on principles of international comity.  The trial court granted the defendants' motion, and the plaintiffs appealed.  On original submission, we reversed and remanded for further proceedings consistent with this opinion.  Appellees filed a motion for rehearing.  We deny appellees' motion, but *sua sponte* withdraw our opinion and judgment of August 12, 2014, to

2

omit unserved defendants MBC Resources Development Corporation and Nida Sarmiento, and issue this opinion and corrected judgment in their stead. Our disposition remains unchanged.

## Background

Beginning in 2006, MBC recruited the plaintiffs in the Philippines to work for IPS in Texas. The plaintiffs signed employment contracts with IPS each year. The 2006 contracts stated that they will be "construed" in accordance with the law of Harris County, Texas, while the post-2006 contracts stated they were to be "constructed" in accordance with the law of the Philippines. In May 2011, the plaintiffs sued in Texas state court, alleging that the defendants had subjected them to a human-trafficking scheme by fraudulently inducing them to sign the contracts and then failing to abide by their terms. They alleged that the defendants:

- Misled and induced them to pay "placement fees" by representing that they would have jobs waiting for them in the United States, when there were no jobs;
- Misled and induced them to sign contracts guaranteeing payment, and then refused to pay them, and instead provided them with a monthly "allowance" that had to be repaid, which resulted in debt bondage;
- Intimidated those who complained by threatening, among other things, deportation and "black listing;"
- Prevented them from seeking employment with other companies in Texas; and
- Refused to pay unpaid wages after they left IPS.

They alleged claims for breach of contract, fraud, unjust enrichment, conversion, theft, and conspiracy. They requested actual, mental anguish, and exemplary damages.

The defendants moved to dismiss the plaintiffs' claims based upon principles of international comity. They argued that the plaintiffs had been employed under a highly regulated overseas employment program governed by the Migrant Workers and Overseas Filipino Act of 1995 and that the Filipino National Labor Relations Commission (NLRC) had exclusive jurisdiction to adjudicate their claims. In support of this contention, they pointed to Section 10 of the Act, which provides:

> Notwithstanding any provision of law to the contrary, . . . NLRC . . . shall have the original and exclusive jurisdiction to hear and decide, within ninety (90) calendar days after the filing of the complaint, the claims arising out of an employer-employee relationship or by virtue of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages.

Migrant Workers and Overseas Filipino Act of 1995, Republic Act 8042, § 10 (2004) (Phil.). The defendants also presented evidence that one of the plaintiffs had filed a complaint with the NLRC regarding his employment with IPS. The defendants asserted that both MBC and IPS are licensed and registered by the Philippines to participate in the overseas employment program, and are thus

4

subject to regulation by the Philippines Overseas Employment Agency (POEA).[1] The defendants pointed to the existence of the POEA and its mandate, as well as to various other Filipino departments and Filipino labor laws to argue that the Philippines' "interest in the parties and issues in this case outweighs by a substantial margin the interests of the United States." Because the Philippines has "extensively legislated both the laws governing the rights of the parties . . . and the procedures for resolution," the trial court should refrain from exercising subject-matter jurisdiction.

In response to the motion, the plaintiffs emphasized that the defendants conceded that dismissal was not required by any contract, treaty, or statute, and that the trial court had discretion to deny the motion and exercise jurisdiction. They argued that Section 10 of the Act, at most, indicated that the Philippines had concurrent jurisdiction over their claims, and other parts of the Act, in particular Section 22, indicated that the Philippines recognized that workers should make claims through a host country's dispute mechanisms, if they were available. The plaintiffs argued that they elected to sue in Texas because most of them still live in the United States, many live in Texas, the contracts were performed in Texas, they suffered harm in Texas, and the Filipino legal system was known to be corrupt.

---

[1] According to the defendants, the POEA regulates recruiting agencies and the foreign employers who contract with those agencies to hire Filipino workers.

They argued that deferring to the Philippines based upon comity principles would undermine Texas public policy against human trafficking, and that the cases cited by the defendants in support of dismissal were legally and factually distinguishable. In support of their argument, the plaintiffs submitted the declaration of Melchor Dizon, a Director of the POEA, in which he averred that "[u]nder the facts and circumstances unique to this case, it appears that the Texas courts are in a good position to resolve this case."

On March 11, 2013, the trial court granted the defendants' motion and dismissed the plaintiffs' claims based on principles of international comity.

## Discussion

In a single issue, the appellants, who were the plaintiffs below, contend that the trial court erred in deferring to the Philippines and dismissing their claims.

## A. Standard of Review

The parties dispute the standard of review to be applied here, where the trial court dismissed the appellants' claims based upon principles of international comity. The appellants argue that whether a court has subject-matter jurisdiction over a case is a legal question and, therefore, our review should be de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). The appellees argue that dismissal based on comity is "voluntary and not

6

obligatory," and therefore the trial court's decision to decline to exercise jurisdiction should be reviewed under an abuse-of-discretion standard. *See Griffith v. Griffith*, 341 S.W.3d 43, 54 (Tex. App.—San Antonio 2011, no pet.).

Although the appellees titled their motion a "Motion to Dismiss For Lack of Jurisdiction," they requested in the motion that the trial court decline to exercise jurisdiction based upon principles of international comity. Accordingly, we agree that the applicable standard of review is the abuse-of-discretion standard. *See Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) ("[W]e look to the substance of a motion to determine the relief sought, not merely to its title."); *Griffith*, 341 S.W.3d at 54 ("application of comity vests in the sound discretion of the tribunal of the forum"); *see also Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 Fed. Appx. 675, 680 (5th Cir. 2009) ("A district court's decision to exercise or decline jurisdiction in the face of possible international comity concerns is reviewed for abuse of discretion."); *Owens-Illinois, Inc. v. Webb*, 809 S.W.2d 899, 902 (Tex. App.—Texarkana 1991, writ dism'd w.o.j.) ("We do not find an abuse of discretion by the Texas trial court in protecting its jurisdiction [by rejecting comity argument] under these circumstances.").

Generally, a trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *See Wagner & Brown., Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008). In matters involving factual disputes, however, a trial court does not abuse its discretion "if it bases its decision on conflicting evidence and some evidence supports its decision." *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)).

## B. Applicable Law

"Texas courts are bound to exercise jurisdiction vested in them by the Texas Constitution and cannot delegate their judicial prerogative where jurisdiction exists." *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 606 (Tex. 2013). However, in some circumstances, Texas courts may defer to the sovereignty of foreign nations according to principles of international comity. *See K.D.F. v. Rex*, 878 S.W.2d 589, 593 (Tex. 1994). Comity is a doctrine grounded in cooperation and mutuality. *Id.* It "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143 (1895); *see Hawsey v. La. Dep't of*

8

*Social Servs.*, 934 S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1996, writ denied) ("Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect.").

"Dismissal of a suit on international comity grounds may sometimes be appropriate when there is litigation pending in a foreign forum or, even absent such litigation, when allowing a case to proceed in the United States would intrude on the interests of a foreign government." *Perforaciones Exploracion*, 356 Fed. Appx. at 681. However, the mere fact that a foreign country's law vests exclusive jurisdiction over a complaint in a tribunal within its borders does not support a U.S. court's decision to decline to hear the complaint under principles of international comity. *See Randall v. Arabian Am. Oil Co.*, 778 F.2d 1146, 1150 (5th Cir. 1985).

To determine whether dismissal based on principles of international comity is appropriate, federal courts apply Sections 402 and 403 of the Restatement (Third) of the Foreign Relations Law of the United States. *See Torres v. S. Peru Copper Corp.*, 965 F. Supp. 899, 908 (S.D. Tex. 1996). One Texas court has also applied Sections 402 and 403 to determine whether the exercise of jurisdiction violated principles of international comity. *See Webb*, 809 S.W.2d at 904

9

(concluding that exercise of jurisdiction by Texas district court was not unreasonable under Section 403(2)). In *Webb*, the Texarkana Court of Appeals held that the trial court's exercise of jurisdiction was not unreasonable under Section 403 and that principles of international comity did not require the trial court to refrain from entering an injunction preventing Owens-Illinois from seeking injunctive relief in Canada. *See id.* at 905.

> Section 402 provides:
>
> Subject to § 403, a state has jurisdiction to prescribe law with respect to
> (1)
>   (a) conduct that, wholly or in substantial part, takes place within its territory;
>   (b) the status of persons, or interests in things, present within its territory;
>   (c) conduct outside its territory that has or is intended to have substantial effect within its territory;
> (2) the activities, interests, status, or relations of its nationals outside as well as within its territory; and
> (3) certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other state interests.

Restatement (Third) of Foreign Relations, § 402 (1987). Section 403 sets forth the following limitation on a state's jurisdiction:

> Even when one of the bases for jurisdiction under § 402 is present, a state may not exercise jurisdiction to prescribe law with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable.

10

Restatement (Third) of Foreign Relations, § 403(1) (1987). Thus, when a basis for jurisdiction under Section 402 is present, the trial court may dismiss only if it concludes that its exercise of jurisdiction would be unreasonable. *See Webb*, 809 S.W.2d at 904.

Section 403(2) sets forth a number of factors to be considered in determining whether the exercise of jurisdiction would be unreasonable. They are: (a) the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory; (b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity regulated, or between that state and those whom the regulation is designed to protect; (c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted; (d) the existence of justified expectations that might be protected or hurt by the regulation; (e) the importance of the regulation to the international political, legal, or economic system; (f) the extent to which the regulation is consistent with the traditions of the international system; (g) the extent to which another state may have an interest in regulating the activity; and

11

(h) the likelihood of conflict with regulation by another state. Restatement (Third) of Foreign Relations, § 403(2).

## C. Analysis

The appellants argue that the trial court abused its discretion by dismissing their claims, because they reside or resided in Texas when the allegedly wrongful conduct occurred, some of the appellees continue to reside in Texas and the United States, the conduct about which they complain occurred in Texas, and the Philippines has not expressed any objection to the trial court exercising jurisdiction over these claims. The appellees argue that the trial court did not abuse its discretion because the Philippines has extensive legislation governing the rights of Filipino workers and those who recruit and employ them overseas, as well as procedures for resolving these disputes.

Although the Texas Supreme Court has not adopted Sections 402 and 403, we, like the Texarkana Court of Appeals and the federal courts, conclude that these provisions set forth the proper framework within which to review the trial court's dismissal. *See Webb*, 809 S.W.2d at 904. Accordingly, we consider the Section 403 factors in determining whether the trial court's exercise of jurisdiction over this case would be unreasonable.

Under the first factor, we examine the extent to which the activity complained of occurred in or has an effect upon Texas. The appellants alleged that all or substantially all of the wrongful conduct alleged in this case occurred in Texas, while they were in Texas working for IPS, a Texas company. However, they acknowledge that their initial recruitment, which they contend was fraudulent, occurred in the Philippines. And the appellants do not dispute that IPS, their Texas-based employer, was required to work with MBC, the Philippines-based and Philippines-regulated recruiting agency, to obtain their services. In short, a substantial part, but not all, of the conduct about which the appellants complain allegedly occurred in Texas.

With respect to the second factor, we consider the connections, such as nationality, residence, or economic activity, between Texas and the parties. Eight of the 57 appellants hold green cards and 26 have been granted T-1 visas. IPS is a Texas company, and four of the individual appellees reside in Texas. The appellants also point out that other employees of IPS in Texas, who are not named defendants, will be called as witnesses. On the other hand, at least one individual appellee is a Filipino resident, and MBC is a Filipino company. Further, all of the appellants are Filipino nationals who came to work for IPS by virtue of the Filipino overseas employment program. Thus, although some evidence supports each

side's argument, it does not support a conclusion that the trial court's exercise of jurisdiction would be unreasonable.

Under the third and fourth factors, we examine the character and importance to Texas of regulating the complained-of activity, the desirability of such regulation, and the existence of justified expectations that might be protected or hurt by Texas's regulation of the activity. The Texas legislature has indicated a desire to regulate and protect Texas employees from human trafficking. *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 98 (West Supp. 2013) (creating private right of action for damages arising from trafficking). The appellants point to State Department reports showing that the Philippines is slow to punish traffickers and argue that the Filipino legal system suffers from rampant corruption; this, they contend, favors jurisdiction in Texas. On the other hand, the evidence shows that the Philippines has a comprehensive legal and regulatory regime governing Filipino recruiting agencies and overseas employers of Filipino workers. At least one of the appellants has availed himself of that regulatory scheme by filing a parallel proceeding before the NLRC complaining about his employment with IPS. The appellees argue that the district court should not exercise jurisdiction because some conduct about which the appellants complain is actually required by Filipino laws and regulations.

In their motion to dismiss, the appellees relied heavily upon Section 10 of the Migrant Workers Act to argue that the NLRC has exclusive jurisdiction and is a strong expression of the Philippines' interest in this case. While Section 10 is one fact that weighs in favor of dismissal insofar as it demonstrates that the Philippines regulates the complained-of activity, contrary to the appellees' argument, Section 10, alone, does not support dismissal of the appellants' case. *See Randall*, 778 F.2d at 1150 (holding that the exclusive jurisdiction provisions of Saudi Arabia's Labor Law cannot deprive an American court of subject matter jurisdiction, "reject[ing] outright the notion that the law of a foreign country can unilaterally curtail the power of our . . . courts to hear a dispute" unless some other agreement or treaty requires that result). On balance, some evidence relevant to the third and fourth factors supports each side's arguments, but the evidence does not support a conclusion that the district court's exercise of jurisdiction would be unreasonable.

Under the fifth and sixth factors, we consider the importance of the regulation to the international political, legal, or economic system and the extent to which the regulation is consistent with the traditions of the international system. Regarding these factors, the appellees argue that the appellants improperly are trying to convert a straightforward employment dispute into a trafficking case,

15

absent any evidence that the appellees ever restrained the appellants. The appellants, on the other hand, argue that Texas has a strong interest in preventing exactly this type of exploitation of migrant workers. While we express no opinion about the merits of the appellants' claims, at this stage of the litigation, we are required to construe the pleadings liberally in their favor and accept as true the factual allegations in the pleading. *See Miranda*, 133 S.W.3d at 226. Thus, the appellees' contention that the appellants have improperly pleaded contract claims as trafficking claims does not support dismissal.

Under the seventh and eighth factors, we examine the extent to which another state may have an interest in regulating the activity and the likelihood of conflict with regulation by another state. The record contains no evidence that the Philippines has expressed any objection to Texas's exercise of jurisdiction over the appellants' claims. The appellants argue that both the United States and the Philippines have jurisdiction over human trafficking, and therefore there is no conflict. They also point to the declaration of Melchor Dizon, a director of the POEA, in which Dizon averred that Texas courts are in a good position to handle the claims. The appellees, on the other hand, argue that the Philippines has a "greater interest" in the conflict, as illustrated by the fact that the appellants were employed under a regulated Filipino overseas employment program and the

16

Philippines has many laws and regulations regarding the treatment of overseas workers and disputes with their employers. While the Philippines has some interest in ensuring compliance with its regulations and protecting Filipino workers, the evidence relevant to the seventh and eighth factors does not support a conclusion that it would be unreasonable for the trial court to exercise jurisdiction over this case.

The appellees principally rely upon three federal cases to argue for affirmance. *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir. 1994); *Torres v. Southern Peru Copper Corp.*, 965 F. Supp. 899 (S.D. Tex. 1996); *Sequihua v. Texaco, Inc.*, 847 F. Supp. 61 (S.D. Tex. 1994). According to the appellees, these cases support the trial court's conclusion that the Philippines' interest in adjudicating the appellants' claims outweighs that of the United States.

In *Turner*, the federal district court denied the German defendants' motion to dismiss or stay the litigation and granted a temporary injunction requested by the American plaintiff, Turner. *Turner*, 25 F.3d at 1519. The Eleventh Circuit concluded that, under principles of international comity, the federal district court suit should be stayed pending the resolution of the first-filed German suit, because the German court, which was a competent court, had already rendered a judgment on the merits, and there was no evidence that the judgment was fraudulent or

repugnant to fundamental principles of justice. *Id.* at 1520–21. *Turner* is unlike this case, because, here, there is no judgment on the merits from a Filipino court and only one of the 57 appellants has filed a claim in the Philippines.

In *Sequihua*, the federal district court concluded that "none of the [Restatement] factors" favored jurisdiction, and dismissed on comity grounds. In that case, residents of Ecuador sued in Texas state court over alleged environmental contamination in Ecuador, seeking monetary relief and an injunction against further contamination. The federal district court concluded that dismissal based on principles of international comity was proper because:

> The challenged activity and the alleged harm occurred entirely in Ecuador; Plaintiffs are all residents of Ecuador; Defendants are not residents of Texas; enforcement in Ecuador of any judgment issued by this Court is questionable at best; the challenged conduct is regulated by the Republic of Ecuador and exercise of jurisdiction by this Court would interfere with Ecuador's sovereign right to control its own environment and resources; and the Republic of Ecuador has expressed its strenuous objection to the exercise of jurisdiction by this Court.

*Sequihua*, 847 F. Supp. at 63.

Finally, in *Torres*, residents of Peru sued the operator of a copper mining and smelting operation, along with the operator's shareholders and financiers, for injuries allegedly caused by toxic emissions in Peru. The only connection to Texas shown by the plaintiffs was that one of the corporate defendants, the controlling

18

shareholder of the operator, "conduct[ed] operations" in Texas, but the shareholder was not a Texas corporation and did not have its principal place of business in Texas. The federal district court followed *Sequihua* and dismissed based on principles of international comity, noting:

> The challenged activity and the alleged harm occurred entirely in Peru; Plaintiffs are all residents of Peru; enforcement in Peru of any judgment rendered by this Court is questionable; the challenged conduct is regulated by the Republic of Peru and exercise of jurisdiction by this Court would interfere with Peru's sovereign right to control its own environment and resources; and the Republic of Peru has expressed strenuous objection to the exercise of jurisdiction by this Court.

*Torres*, 965 F. Supp. at 909.[2]

In summary, having considered the Section 403 factors, we conclude that *Sequiha* and *Torres* do not compel affirmance here because, in those cases, none of the Restatement factors favored jurisdiction. *Turner* likewise is significantly different from this case. Here, many of the Restatement factors—including the Texas residence of some appellants and appellees, the fact that a substantial part of

---

[2] The appellees also rely upon *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005) and *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998) to argue that the trial court's decision to abstain from hearing the case should be upheld "because the Philippines has extensively legislated both the laws governing the rights of the parties to this dispute and the procedures for resolution of the parties' dispute under the Migrant Workers Act." But those cases are of limited utility because they did not address comity and, instead, involved the enforcement of forum selection clauses in Filipino seamen's contracts. *See Lim*, 404 F.3d at 900; *Marinechance*, 143 F.3d at 220.

the alleged wrongful conduct is alleged to have occurred in Texas, and Texas's interest in preventing human trafficking within Texas—support the exercise of jurisdiction in Texas. And although some factors—the Filipino regulatory scheme regarding the overseas employment program, the residence in the Philippines of some appellants and appellees, and the fact that some of the wrongful conduct (the alleged fraudulent inducement) is alleged to have occurred in the Philippines— favor jurisdiction in the Philippines, the question here is whether it was *unreasonable* for the trial court to exercise jurisdiction over this case. *See* Restatement (Third) of Foreign Relations, § 403(1); *Webb*, 809 S.W.2d at 904. Based on the record in this case, we conclude it would not be.

Texas law on forum non conveniens supports our conclusion. Section 71.051(e) of the Texas Civil Practice and Remedies Code signals an intent that Texas courts exercise jurisdiction in cases involving legal residents of Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(e) (West 2008). And even in cases in which Section 71.051(e) does not prohibit dismissal, we note that dismissal is proper only if the balance of factors weighs heavily against Texas and in favor of the alternative forum. *See Vinmar Trade Fin., Ltd. v. Util. Trailers de Mex., S.A. de C.V.*, 336 S.W.3d 664, 672 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("The defendants bear the burden of proof on all elements of the forum non

conveniens analysis and must establish that the balance of factors strongly favors dismissal."); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Considering all of the Section 403 factors in light of this standard and the principle that Texas courts must not "delegate their judicial prerogative where jurisdiction exists," *Masterson*, 422 S.W.3d at 606, we conclude that exercise of jurisdiction over this case by Texas is not unreasonable, and, accordingly, that the trial court erred in dismissing the case. *See* Restatement (Third) of Foreign Relations, § 403(1); *see also Webb*, 809 S.W.2d at 904 (applying Restatement Sections 402 and 403 and concluding that exercise of jurisdiction by Texas court was not unreasonable).

We sustain the appellants' sole issue.

## Conclusion

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.



Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

21