Opinion issued March
10, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00281-CV

———————————

VINMAR TRADE FINANCE, LTD., Appellant

V.

UTILITY TRAILERS DE MEXICO, S.A. DE C.V.
AND TRACTOCAMIONES KENWORTH 

DE MONTERREY, S.A. DE C.V., Appellees



 



 

On Appeal from the 152nd District
Court

Harris County, Texas

Trial Court Case No. 2007-54944



 



 

O P I N I ON

          Vinmar Trade Finance, Ltd.
(“Vinmar”), a Cayman Islands corporation headquartered in Houston, Texas, brought
suit against Mexican corporations Utility Trailers de Mexico, S.A. de C.V. (“Utility”)
and Tractocamiones Kenworth de Monterrey, S.A. de C.V. (“Kenworth”) for fraud,
civil conspiracy, and breach of contract in Harris County district court.  The trial court, inter alia, granted
Utility’s special appearance and Utility’s and Kenworth’s motion to dismiss
based on forum non conveniens.  

In five appellate issues, Vinmar challenges
the trial court’s judgment dismissing its claims against Utility and Kenworth.  Of these issues, the dispositive issue that
we address is whether the trial court abused its discretion when it granted the
defendants’ motion to dismiss based on common law forum non conveniens.  Because we hold that the trial court did not
abuse its discretion, we affirm the judgment of the trial court.  

Factual & Procedural Background

          Vinmar is a corporation
organized under the laws of the Cayman Islands with its headquarters in
Houston, Texas.  According to its
website, Vinmar “has been successfully providing international trade, finance
and logistics in emerging markets.”  Vinmar
is part of The Vinmar Group, which has 26 offices and subsidiaries in 20
countries, including an agent in Monterrey, Mexico.  It has over $1 billion in annual revenues.

Utility is a family owned business that
sells new and used trailers.  It is organized
under Mexican law and headquartered in Mexico. 
Kenworth is a seller of tractor-trucks. 
It is also a Mexican corporation with its principal place of business in
Monterrey, Mexico.  

Tracomsa, S.A., a Mexican
transportation and trucking company, sought to purchase tractor-trucks from
Kenworth and trailers from Utility.  Tracomsa
needed financing to purchase the equipment. 
A third-party intermediary, San Antonio Trade Group, introduced Tracomsa
to Vinmar, which agreed to finance the equipment.  

To facilitate the financing,
representatives of Kenworth and Utility communicated, in Spanish, via email,
telephone, and telefax with Vinmar’s representative, Enrique Tamashiro.  Some of the communications were initiated by
Tamashiro, who was located in Houston, and some were initiated by
representatives of Kenworth and Utility, who were located in Mexico.  The communications served to provide
information regarding Kenworth and Utility and to identify the equipment being
purchased by Tracomsa.  The
communications indicated that Tracomsa intended to purchase 30 tractor-trucks
from Kenworth and 28 trailers from Utility. 
Kenworth and Utility provided to Vinmar the serial and identification
numbers of equipment to be purchased by Tracomsa.  

Tracomsa and Vinmar signed an
“Equipment Operating Credit Agreement” in which Vinmar agreed to finance the
purchase of the trailers and the tractor-trucks.  Attached to the agreement was a list of the 28
Utility trailers and 30 Kenworth tractor-trucks, including serial numbers, to
be financed by Vinmar.  Utility and
Kenworth were not parties to that agreement.

In addition to the communications,
Tamashiro also traveled to Monterrey, Mexico to meet with representatives of
Utility and Kenworth and to conduct due diligence with respect to the
equipment.  Tamashiro was accompanied by Jessica
Linares, a representative of San Antonio Trade Group.  While in Monterrey, representatives of
Kenworth and Utility each signed a “Seller’s Certificate,” the contents of
which would later be in dispute.  Following
the visit, Tracomsa gave Vinmar a promissory note in the principal amount of
$4,978,549.80.

Kenworth and Utility also gave
instructions to Vinmar regarding the wiring of funds.  Vinmar wired $1,765,033.20 to Utility’s bank
account in Concord, California to pay for the 28 Utility trailers.  Vinmar also wired $3,213,516.30 to Kenworth’s
bank account in Laredo, Texas to pay for the 30 Kenworth tractor-trucks.

Tracomsa then advised Kenworth that
it was reducing its order from 30 truck-tractors to 14 truck-tractors and
modifying certain unit specifications. 
Following the order reduction, Tracomsa further requested reimbursement
of the excess funds held by Kenworth that had been received from Vinmar.  In response, Kenworth authorized its bank in
Laredo, Texas to refund $1,876,516.60 to Tracomsa’s bank, which was also in
Laredo, Texas, with such sum reflecting the change in the order.  Kenworth later delivered 14 truck-tractors to
Tracomsa.

Tracomsa also notified Utility that
it was changing its order with regard to the 28 trailers.  Pursuant to the order change, Utility later
delivered 386 tires and 15 trailers to Tracomsa.  Utility refunded $608,536.00 to Tracomsa as a
result of the order change.  The funds
were transferred from Utility’s bank in California to Tracomsa’s bank account
in Laredo, Texas.  

Tracomsa defaulted on its repayment
obligation to Vinmar under the Promissory Note. 
With regard to the default, Vinmar sued Tracomsa in Monterrey, Mexico
and then in Harris County, Texas.  

In a separate action, Vinmar sued Utility
and Kenworth in Harris County district court, the action from which the instant
appeal arises.  Vinmar alleges that Utility
and Kenworth breached the respective Seller’s Certificate signed by each
seller.  Specifically, Vinmar alleges
that each Seller’s Certificate prohibited the seller from transferring any of
the funds to Tracomsa.  Vinmar asserts
that Utility and Kenworth breached the Seller’s Certificates when each transferred
funds to Tracomsa after Tracomsa changed the orders by reducing the amount of
equipment it was purchasing.

Vinmar also sued Utility and
Kenworth for fraud.  Vinmar alleges that
Utility and Kenworth made intentional misrepresentations and failed to disclose
material facts regarding the sale of the equipment and the financing.  Vinmar also asserts a claim for
conspiracy.  Vinmar alleges that Utility,
Kenworth, and Tracomsa conspired to defraud it of the principal sum of
$4,978,549.00.  Vinmar later added San
Antonio and its principal, Andrew Parker, as defendants.

Utility filed a special appearance
asserting that it was not amenable to process issued by a Texas court because
the trial court did not have personal jurisdiction over it.  Utility asserted that it lacked the requisite
minimum contacts with Texas to satisfy the requirements of due process.  Kenworth and Utility, subject to its special
appearance, also filed a motion to quash service contending that Vinmar had not
been properly served them with process as required by international
treaty.  

In addition, Kenworth and Utility
filed a motion to dismiss based on the common law doctrine of forum non
conveniens.  The defendants asserted that
Mexico is the proper forum for Vinmar’s suit against them.  

To save time and expense, Kenworth
and Utility each stipulated to certain facts for the limited purpose of
supporting Utility’s special appearance, the motions to dismiss based on forum
non conveniens, and the motions to quash service.  These written stipulations were filed in the
trial court and appended to the motions. 
In addition, each defendant supported its motion to dismiss based on
forum non conveniens with declarations signed by the defendant’s corporate
representatives and with declarations signed by a Mexican attorney.  

To support dismissal based on forum
non conveniens, the defendants asserted that Mexico provides an adequate forum
for Vinmar’s claims.  Kenworth and
Utility pointed out that the suit arose from the sale of equipment in Mexico
between Mexican companies.  They also
pointed out that Vinmar is a Caymen Island company that although headquartered
in Houston, has offices and subsidiaries in more 26 counties, including Mexico.  Kenworth and Utility asserted that the vast
majority of the events at issue occurred in Mexico.  They further asserted that the alleged misrepresentations
were made in Mexico, the Seller’s Certificates were executed in Mexico, and the
alleged conspiracy took place in Mexico. 
The defendants averred that the vast majority of the witnesses and
documents relevant to this litigation are located in Mexico and are written in
Spanish.  Lastly, the defendants asserted
that all of Vinmar’s claims are governed by Mexican law.

Vinmar responded to the defendants’
motions to dismiss based on forum non conveniens by asserting that private and
public interest factors weighed in favor of keeping the suit in Texas.  Because it is headquartered in Houston,
Vinmar averred, “The State of Texas has a vested interest in the fair
resolution of claims by its business owners.” 
Vinmar also pointed to Kenworth’s and Utility’s acceptance of the
transfer of funds from Vinmar’s Texas bank account.  Vinmar also relied on Kenworth’s transfer of
funds from its Laredo bank account to Tracomsa’s Laredo bank account and to
Utility’s transfer of funds from its California bank account to Tracomsa’s Texas
account.  Vinmar asserted that “a
majority of witnesses and documents with respect to these transfers are located
in Texas.”  Vinmar claimed that co-defendant,
Andrew Parker, and non-party witness, Jessica Linares, are located in
Texas.  

In support of its response, Vinmar
relied on the Kenworth’s and Utility’s stipulations.  It also offered the affidavit of Jessica
Linares, the San Antonio Trade Group employee who traveled to Monterrey, Mexico
with Enrique Tamashiro, Vinmar’s representative.  In her affidavit, Linares testified that, when
she was in Monterrey, she heard Kenworth’s representative discuss with Noe
Chavez, the principal of Tracomsa, their plan to misrepresent the equipment purchase
to Vinmar.  Specifically, Linares testified,


I was present at a meeting
in Monterrey, Mexico between Noe Chavez and Marcos Gil, of Kenworth de
Monterrey.  In that meeting, Marcos Gil
and Noe Chavez discussed their intent to misrepresent the transaction to Vinmar.
 Marcos Gil and Noe Chavez discussed
that, while the Vinmar loan transaction documents represented that Tracomsa was
acquiring 30 trucks, Noe Chavez and Tracomsa, S.A. intended to “return” most of
the trucks to Kenworth de Monterrey. Kenworth de Monterrey, in turn, would then
send a refund to Tracomsa, S.A., which Noe Chavez would use for purposes other than
what was being represented to Vinmar.  

 

Linares also stated that she had
heard conversations between her boss, Andrew Parker, and Chavez similar in
substance to the conversation she had heard between Chavez and Utility’s
representative.  In the conversations,
Chavez had stated that he planned to purchase less equipment from Kenworth and
Utility than had been represented to Vinmar. 
He then planned to keep the excess funds for other purposes.  Linares testified that Chavez also told
Parker that he had contacts at Utility and Kenworth that would help him misrepresent
the transactions to Vinmar. 

Ultimately, the trial court granted
the defendants’ motion to quash service, Utility’s special appearance, and
Utility’s and Kenworth’s motions to dismiss based on the common law doctrine of
forum non conveniens.  The trial court
also granted Kenworth’s and Utility’s motion to sever Vinmar’s claims against
Andrew Parker and San Antonio Trade Group from Vinmar’s claims against Kenworth
and Utility.  

          Vinmar filed a motion for
new trial and motion for reconsideration. 
With regard to the forum non conveniens issue, Vinmar claimed, for the
first time, that although it was an available forum for it to file its claims,
Mexico is not adequate alternative forum because of the high level of
corruption of the Mexican judiciary.  In
support of this assertion, Vinmar cited numerous internet websites that it averred
contain articles discussing the corrupt state of the Mexican judicial system.  

          In its motion for new
trial, Vinmar reiterated its arguments that the balance of the private and
public interest factors involved in a forum non conveniens analysis weighed in
its favor.  The trial court denied
Vinmar’s motion for new trial and for motion for reconsideration.  This appeal followed.  In five issues, Vinmar contends that the
trial court erred in granting Utility’s special appearance, in dismissing its
claims against Utility and Kenworth based on the common law doctrine of forum
non conveniens, in granting the defendants’ motion to quash service, and in
severing Vinmar’s claims against Utility and Kenworth from its claims against
San Antonio Trade Group and its principal, Andrew Parker.  

Forum Non Conveniens 

We begin by addressing the
dispositive issue of whether the trial court abused its discretion when it
dismissed Vinmar’s claims against Utility and Kenworth based on the common law
doctrine of forum non conveniens.  We recognize that two of Vinmar’s
issues challenge the trial court’s order granting Utility’s special appearance.  Generally, courts are required to determine
questions of jurisdiction before reaching the merits of a case.  See
Texas Ass’n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex.
1993).  We further recognize that the
doctrine of forum non conveniens applies only if the trial court has
jurisdiction over the parties.  See Exxon Corp. v. Choo, 881 S.W.2d 301,
302 n. 2 (Tex. 1994) (“Before a court may invoke forum non conveniens, the
court must find that it has jurisdiction over the defendant.”).  Nonetheless, the United States Supreme Court
has held that certain non-merits, non-jurisdictional issues, such as forum non
conveniens, may be decided before jurisdictional issues under the proper circumstances.  For example, in Sinochem Int’l Co. v. Malaysia Int’l Shipping Corp., 549 U.S. 422, 432,
127 S. Ct. 1184, 1192 (2007), the United States Supreme Court held that the
question of forum non conveniens can be addressed before considering whether
subject matter jurisdiction exists.  Id. at 1188 (explaining that “a district
court has discretion to respond at once to a defendant’s forum non conveniens
plea, and need not take up first any other threshold objection[,]” including
subject matter jurisdiction or personal jurisdiction).  “A district court therefore may dispose of an
action by a forum non conveniens dismissal, bypassing questions of
subject-matter and personal jurisdiction, when considerations of convenience,
fairness, and judicial economy so warrant.” 
Id. at 1192 (stating that
forum non conveniens dismissal “denies audience to a case on the merits” and
“is a determination that the merits should be adjudicated elsewhere” (internal
quotation marks and brackets omitted)). 
Thus, Sinochem stands for the
proposition that certain non-merits, non-jurisdictional issues may be addressed
preliminarily, because “[j]urisdiction is vital only if the court proposes to
issue a judgment on the merits.”  Id. at 1191–92; see Forsythe v. Saudi Arabian Airlines Corp., 885 F.2d 285, 290
(5th Cir. 1989) (concluding that disposal of case on forum non conveniens
grounds obviated need to consider subject matter jurisdiction); see also Leroy v. Great W. United Corp.,
443 U.S. 173, 180, 99 S. Ct. 2710, 2715 (1979) (upholding decision to address
venue before jurisdiction).  In this
case, judicial economy is best served by addressing the forum non conveniens
issue first because it pertains to the dismissal of Vinmar’s claims against Utility
and Kenworth.  In contrast, the trial
court’s grant of the special appearance disposed of Vinmar’s claims against
Utility only.  

A.      Legal Standards 

          1.       Principles of Forum Non Conveniens 

Forum non conveniens is an
equitable doctrine exercised by courts to prevent the imposition of an
inconvenient jurisdiction on a litigant.  Exxon
Corp. v. Choo, 881 S.W.2d 301, 302 (Tex. 1994).  A trial court will exercise the doctrine of
forum non conveniens when it determines that, for the convenience of the
litigants and witnesses and in the interest of justice, the action should be
instituted in another forum.  See id. 
In short, the “central focus of the forum non conveniens inquiry is
convenience.”  Quixtar Inc. v. Signature Management Team, LLC, 315 S.W.3d 28, 33
(Tex. 2010) (quoting Piper Aircraft Co.
v. Reyno, 454 U.S. 235, 249, 102 S. Ct. 252, 262  (1981)).

          Building on its holding in
Gulf Oil Corp. v. Gilbert, 330 U.S.
501, 67 S. Ct. 839 (1947), the Supreme Court set out the framework for
analyzing forum non conveniens in an international context in Piper Aircraft.  First, “the court must determine whether there
exists an alternative forum.”  Piper Aircraft, 454 U.S. at 255, n.22,
102 S. Ct. at 265.  The court considers
the amenability of the defendant to service of process and availability of an
adequate remedy in the alternative forum. See
id., 454 U.S. at 255 n.22, 102 S. Ct. at 265; In re General Elec. Co., 271 S.W.3d 681, 688 (Tex. 2008) (orig. proceeding).
 Second, the court must determine which
forum is best suited to the litigation.  See Piper Aircraft, 454 U.S. at 255, 102
S. Ct. at 265.  In performing this second
step, a court must consider whether certain private and public interest factors
weigh in favor of dismissal.  See Gulf Oil, 330 U.S. at 508, 67 S. Ct.
at 843.  A court must be mindful that
“the ultimate inquiry is where trial will best serve the convenience of the
parties and the interests of justice.”  Koster v. Am. Lumbermens Mutual Casualty Co.,
330 U.S. 518, 527, 67 S. Ct. 828, 833 (1947).  

The defendants bear the burden of
proof on all elements of the forum non conveniens analysis and must establish
that the balance of factors strongly favors dismissal.  See RSR
Corp. v. Siegmund, 309 S.W.3d 686, 710–11 (Tex. App.—Dallas 2010, no pet.);
see also DTEX, LLC v. BBVA Bancomer, S.A.,
508 F.3d 785, 794 (5th Cir. 2007).  Ordinarily,
a defendant seeking forum non conveniens dismissal “bears a heavy burden in
opposing the plaintiff’s chosen forum.”  Sinochem Int’l Co., Ltd.  v. Malaysia Int’l Shipping Corp., 549 U.S.
422, 430, 127 S. Ct. 1184, 1191 (2007); see
Gulf Oil, 330 U.S. at 508, 67 S. Ct. at 843 (“[U]nless the balance is
strongly in favor of the defendant, the plaintiff’s choice of forum should
rarely be disturbed.”).

Nonetheless, a plaintiff’s choice
of forum is not dispositive.  Piper Aircraft, 454 U.S. at 255–56 n.23;
see DTEX, 508 F.3d at 795.  The Piper
Aircraft court explained, 

Citizens or residents
deserve somewhat more deference than foreign plaintiffs, but dismissal should
not be automatically barred when a plaintiff has filed suit in his home forum.  As always, if the balance of conveniences
suggests that trial in the chosen forum would be unnecessarily burdensome for
the defendant or the court, dismissal is proper.

 

Piper Aircraft, 454 U.S. at 255–56 n. 23

 

As recognized by the Fifth Circuit
in Dtex, 

Judicial concern for
allowing citizens of the United States access to American courts has been
tempered by the expansion and realities of international commerce.  When an American corporation doing extensive
foreign business brings an action for injury occurring in a foreign country,
many courts have partially discounted the plaintiff’s preference of a United
States forum.  

 

Dtex, 508 F.3d
at 795.  The court recognized, 

In an era of increasing
international commerce, parties who choose to engage in international
transactions should know that when their foreign operations lead to litigation
they cannot expect always to bring their foreign opponents into a United States
forum when every reasonable consideration leads to the conclusion that the site
of the litigation should be elsewhere.

 

Id. (quoting Mizokami Bros. of Ariz., Inc. v. Baychem
Corp., 556 F.2d 975, 977 (9th Cir. 1977)); see also Base Metal Trading SA v. Russian Aluminum, 253 F. Supp. 2d
681, 696 (S.D.N.Y. 2003) (explaining that “[w]here an American plaintiff
chooses to invest in a foreign country and then complains of fraudulent acts
occurring primarily in that country, the plaintiff’s ability to rely upon
citizenship as a talisman against forum non conveniens dismissal is diminished”).
 

2.       Standard of
Review

A “forum non conveniens
determination is committed to the sound discretion of the trial court.”  Quixtar,
315 S.W.3d at 31 (quoting Piper Aircraft,
454 U.S. at 257, 102 S. Ct. at 266).  “It
may be reversed only when there has been a clear abuse of discretion; where the
court has considered all the relevant public and private interest factors, and
where its balancing of these factors is reasonable, its decision deserves
substantial deference.”  Id. (quoting Piper Aircraft, 454 U.S. at 257, 102 S. Ct. at 266).  

A trial court commits an abuse of
discretion when it acts “without reference to any guiding rules and
principles.”  Id. (quoting Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985)).  The “mere fact that a trial judge may decide a
matter within his discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an abuse of
discretion occurred.”  Id. (quoting Downer, 701 S.W.2d at 242). 

In Quixtar, the Supreme Court of Texas made clear that a court of
appeals should not conduct a de novo review of the evidence by mechanically
reweighing each forum non conveniens factor. 
See id. at 35; see also O’Keefe v. Noble Drilling Corp.,
347 Fed. App’x. 27, 30–31 (5th Cir. 2009) (“In reviewing forum non conveniens
decisions, our duty is to review the lower court’s decision making process and
conclusion and determine if it is reasonable; our duty is not to perform a de
novo analysis and make the initial determination for the district court.”).  The court emphasized that “forum non
conveniens dismissals are within the sound discretion of the trial court.”  See Quixtar,
315 S.W.3d at 35.

With the above principles in mind,
we now determine whether the trial court abused its discretion when it
dismissed Vinmar’s claims against Utility and Kenworth based on the common law
doctrine of forum non conveniens.  More
precisely, we review the record to determine whether the trial court acted
within its discretion when it implicitly determined (1) an adequate,
alternative forum exists for Vinmar’s claims in Mexico and (2) the balance of
the Gulf Oil public and private
interest factors weigh in favor of dismissal. 


B.      Analysis

          1.       Adequacy of Mexico as an Alternative
Forum

For a case to be dismissed for forum
non conveniens, there must be another forum that could hear the case.  Piper
Aircraft, 454 U.S. at 254 n.22, 102 S. Ct. at 265.  An alternative forum exists when it is both
available and adequate.  Saqui v. Pride Cent. America, LLCA, 595
F.3d 206, 211 (5th Cir. 2010).  A
“foreign forum is available when the entire case and all the parties can come
within the jurisdiction of that forum.” 
Sarieddine v. Moussa, 820 S.W.2d 837, 841 (Tex. App.—Dallas 1991, writ denied) (quoting Quintero v. Klaveness Ship Lines, 914
F.2d 717, 727 (5th Cir. 1990)).  Vinmar
does not dispute that Mexico is available forum, rather, Vinmar questions
whether Mexico is an “adequate” forum.[1]  

“An alternative forum is adequate
if the parties will not be deprived of all remedies or treated unfairly, even
though they may not enjoy the same benefits as they might receive in an
American court.”  In re Pirelli Tire, L.L.C.,
247 S.W.3d 670, 678 (Tex. 2007) (orig. proceeding) (quoting Vasquez v. Bridgestone/Firestone, Inc.,
325 F.3d 665, 671 (5th Cir. 2003)).  “‘The
substantive law of the foreign forum is presumed to be adequate unless the
plaintiff makes some showing to the contrary, or unless conditions in the
foreign forum made known to the court, plainly demonstrate that the plaintiff
is highly unlikely to obtain basic justice there.’”  Dtex,
508 F.3d at 796 (quoting Tjontveit v. Den
Norske Bank ASA, 997 F. Supp. 799, 805 (S.D. Tex. 1998)).  

In the trial court, appellees
offered the declaration of Jose Arturo Gonzalez Elizondo, a Mexican attorney,
as evidence of the adequacy of the Mexican forum.  The declaration provided the following
information to the trial court: (1) Mexican law would allow Vinmar to bring
claims for money damages based on the facts alleged; (2) Mexican law provides a
means for a successful party to enforce a money judgment; (3) Mexico’s legal
system provides procedures which would allow Vinmar to join all parties to the
litigation, including San Antonio Trade Group and Andrew Parker; (4) Mexico’s
legal system provides a method by which the parties may gather relevant
evidence, compel witnesses to appear, to introduce documentary evidence, and to
recover money damages; (5) there is a court in Monterrey, Mexico in which Vinmar
could file its claim; (6) the judges of the Monterrey courts are licensed
attorneys, who are appointed to the bench and have years of experience as
attorneys; (7) each judge handles approximately 100 civil cases per year; and
(8) the average time from filing until disposition is three years. 

Vinmar asserts that Mexico is not
an adequate alternate forum because it will not be treated fairly due to the general
corruption of the Mexican judiciary.  To
support its argument, Vinmar cites a multitude of Internet websites that
purportedly detail the corruption.  We
begin by noting that adequacy or inadequacy of a forum is typically established
by expert affidavits, not by Internet websites or other evidence of
questionable credibility.  Cf. Bhatnagar v. Surrendra Overseas,
Ltd., 52 F.3d 1220, 1230 n.8 (3d Cir. 1995) (discounting newspaper article as
evidence of foreign forum’s inadequacy); see
also Perforaciones Maritimas Mexicanas S.A. de C.V. v. Seacor, 443
F.Supp.2d 825, 832 (S.D. Tex. 2006) (discussing lack trustworthiness of
Internet articles).  A review of the case
law shows that a forum-is-too-corrupt-to-be-adequate argument based on
anecdotal evidence and allegations has been roundly rejected by the
overwhelming majority of courts considering it. 
See, e.g., Stroitelstvo Bulgaria
Ltd. v. Bulgarian-American Enterprise Fund, 589 F.3d 417, 421 (7th Cir. 2009)
(stating that plaintiffs’ “generalized, anecdotal complaints of corruption are
not enough for a federal court to declare that an EU nation’s legal system is
so corrupt that it can’t serve as an adequate forum”); Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1179 (9th Cir. 2006)
(concluding that plaintiff’s “anecdotal evidence of corruption and delay” in
the Philippine courts insufficient to show inadequacy); In re Arbitration between Monegasque de Reassurances S.A.M. v. Nak
Naftogaz of Ukr., 311 F.3d 488, 499 (2d Cir. 2002) (refusing “to pass value
judgments on the adequacy of justice and the integrity of Ukraine’s judicial
system on the basis of no more than . . . bare denunciations and sweeping
generalizations”); Leon v. Millon Air,
Inc., 251 F.3d 1305, 1312 (11th Cir. 2001) (requiring plaintiff to
substantiate allegations of serious corruption or delay with “significant
evidence documenting the partiality or delay . . . typically associated with
the adjudication of similar claims”); Torres
v. S. Peru Copper Corp., 965 F. Supp. 899, 903 (S.D. Tex. 1996)
(determining that Peruvian judicial system was not so corrupt as to render Peru
an inadequate forum); but see Bhatnagar,
52 F.3d at 1226–27, 1235 (affirming district court’s determination that India
was inadequate forum and noting reliance on two expert affidavits stating that
the Indian legal system was in “virtual collapse” and suffered delays of 15–20
years on average).  Moreover, we note
that courts, including the Supreme Court of Texas, have determined Mexico to be
an adequate forum.  See, e.g, In re Pirelli Tire, 247 S.W.3d at 678; Loya v. Starwood Hotels & Resorts Worldwide,
Inc., 583 F.3d 656 (9th Cir. 2009);
In re Ford Motor Co., 580 F.3d 308 (5th Cir. 2009); DTEX, 508 F.3d at 797;
Vasquez v. Bridgestone/Firestone, Inc ., 325 F.3d 665, 671 (5th Cir. 2003);
Gonzalez v. Chrysler Corp., 301 F.3d
377, 382 (5th Cir. 2002); Navarrete De
Pedero v. Schweizer Aircraft Corp., 635 F. Supp. 2d 251, 261 (W.D.N.Y. 2009).

Vinmar also contends that it has
already been the victim of corruption by the Mexican court system related to
this controversy.  According to Vinmar, it
obtained a judgment against Tracomsa in the trial court in Monterrey, Mexico.  It states that that the judgment was then reversed
on appeal.  Based on the procedure on
which the judgment was reversed, Vinmar asserts that the Mexican legal system
is corrupt.  Other than Vinmar’s
assertions in its motion for new trial, the appellate record contains no
evidence to support this assertion.  In
addition, it would be inappropriate for us to sit in judgment of another country’s
appellate process, particularly when based purely on argument and anecdotal assertions.  

Vinmar further claims that Noe
Chavez, Tracomsa’s principal, and others associated with appellees, have
engaged in corrupt practices involving Mexican governmental officials.  However, there is no evidence in the record
to support such assertions; they also are anecdotal and speculative.  

We conclude that the trial court
did not abuse its discretion when it implicitly determined that Mexico is an
adequate alternative forum for Vinmar to pursue its claims against
appellees.  

2.       Private
Interest Factors

On appeal, Vinmar asserts that the
trial court abused its discretion in dismissing its claims based on forum non
conveniens because appellees failed to meet their burden to show that the
private interest factors weighed in favor of a Mexican forum.  The factors pertaining to the private interests
of the litigants include the following: (1) the ease of access to evidence; (2)
the availability of compulsory process for the attendance of unwilling
witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the
possibility of a view of the premises, if appropriate; and (5) any other
practical factors that make trial expeditious and inexpensive.

 

See Gulf Oil, 330 U.S. at 508, 67 S. Ct. at
843; Quixtar, 315 S.W.3d at 33.  Regarding the adequacy of proof, a forum non
conveniens movant must provide enough information to enable the trial court to
balance the parties’ interests.  See Piper Aircraft, 454 U.S. at 258–59,
102 S. Ct. at 267 (holding that affidavits describing evidentiary problems defendants
would face if trial held in United States were sufficient).  By the same token, the evidence need not be
overly detailed.  See id. (explaining that it is not necessary for defendants to
“submit affidavits identifying witnesses they would call and the testimony
these witnesses would provide if the trial were held in the alternative forum”);
Quixtar, 315 S.W.3d at 34 (explaining
that defendant need not provide a detailed quantification of costs).  

          The Quixtar court further emphasized that the United States Supreme
Court purposefully refused to “lay down a rigid rule to govern discretion” in
these cases because “[e]ach case turns on its facts.”  Id. at
34 (quoting Piper Aircraft, 454 U.S. at
249, 102 S. Ct. at 263).  If “central
emphasis were placed on any one factor, the forum non conveniens doctrine would
lose much of the flexibility that makes it so valuable.”  Id. (quoting
Piper Aircraft, 454 U.S. at 249–50,
102 S. Ct. at 263).  It acknowledged that
the various factors weighed by the trial court “may be difficult to quantify.”  See id.

We do not reweigh the Gulf Oil factors here; that is the job
of the trial court.  See id.  Instead, we view the
evidence in the record to determine whether the trial court acted within its
sound discretion in weighing the factors and determining that the balance
favored dismissal.  See id.  

          In conducting our review,
it is useful to keep in mind the claims at issue.  As mentioned, Vinmar sued appellees for
breach of contract, fraud, and conspiracy. 
Vinmar contends that appellees breached the Seller’s Certificates by
refunding Tracomsa the excess funds transferred by Vinmar to appellees for the
equipment purchases.  Vinmar also
contends that appellees and Tracomsa conspired to swindle Vinmar by misrepresenting
and inflating the quantity of equipment that Tracomsa would purchase from
appellees for the purpose of obtaining excess funds from Vinmar.  

          With respect to the
private interest factors, appellees evidence showed that much of the pertinent
documentary evidence and witnesses are located in Mexico.  Specifically all employees and
representatives of the three alleged co-conspirators—Utility, Kenworth, and Tracomsa—are located in Mexico.  These are the witnesses with first-hand
knowledge of whether a conspiracy existed to misrepresent the equipment
purchases to Vinmar.  The appellees’
representatives will also testify regarding the content of the Seller’s
Certificates, which is in dispute.  Similarly,
all records of appellees and Tracomsa are located in Mexico.  Appellees forum non conveniens evidence also
shows that representatives of Mexican administrative agencies and documents
from those agencies may be necessary for trial. 


          In its brief, Vinmar
contends that “there is no indication that there will be any greater ease of
access to sources of proof in Mexico.”  Contrary
to this assertion, appellees’ evidence identifies non-party witnesses and
evidence that are in Mexico.  Being
non-parties to the litigation, such witnesses may be unwilling or resistant to
participate in the process.  Of
particular significance is the fact that appellees’ alleged co-conspirator,
Tracomsa, is a Mexican company located in Mexico.  Ease of access to Tracomsa representatives
and documents, as identified in appellees’ evidence, will be much greater in
Mexico.  The same is true of the evidence
identified by appellees in the possession of Mexican administrative
agencies.  

          Appellees also offered the
declaration of Mexican attorney, Jose Arturo Gonzalez Elizondo.  In the declaration, Elizondo describes the
process by which litigants in Mexico may obtain the testimony of witnesses
living in another county for use in a Mexican legal proceeding.  Specifically, Elizondo stated,

Mexico’s legal system
contemplates in its procedural law; Codigo
Federalde Procedimientos Civiles, the procedure of how a party in
litigation can obtain the testimony of a witness living in a foreign country.
The procedure establishes the following: The party must apply to the court in
Mexico and identify the full name and address of the witness, accompany the
application with the questions that conform [sic] the testimony; these
questions must be submitted to the opposing party in order to give them the
right to make counter questions.  After
this procedure at the court in Mexico is completed, the notification and
process of obtaining the testimony will be according the HAGUE TAKING OF
EVIDENCE CONVENTION, through letters of request establishing the purpose of
this procedure and soliciting the assistance of the competent tribunal in the
foreign country in order to obtain the testimony and remit that testimony to
the Mexican tribunals for its official translation.  

          

          Thus, appellees’ evidence
showed that the testimony of Jessica Linares and Andrew Parker, who each are
identified as a potential witness, can be obtained for use in a Mexican
forum.  Elizondo’s declaration shows that
such testimony can be obtained without the necessity of either witness traveling
to Mexico.

Appellees did not specifically
quantify the expense of litigation in either forum.  However, because the majority of the
pertinent evidence and witnesses are in Mexico, it follows that the expense of litigating
in Texas will be greater than it would be to litigate in Mexico.  See id.
at 34 (citing In re Volkswagen,
545 F.3d 304, 317 (5th Cir. 2008) (dismissing need to quantify travel expenses
because of the “obvious conclusion” that travel distance from home means time
away from work, food, lodging expenses, and similar costs)).  Moreover, the record shows that many of the aforementioned
documents are in Spanish, underlying communications in this case were in
Spanish, and the representatives of the three alleged co-conspirators are
Spanish-speaking.  Thus, it also logically
follows that litigating the case in Texas would necessitate the expense of
translation.  

          Based on the record, we
conclude that the trial court did not abuse its discretion in implicitly determining
that appellees presented sufficient evidence to tip the balance of the private
interest factors in favor of dismissal.  

3.       Public Interest
Factors

Vinmar also asserts that the trial
court abused its discretion in dismissing its claims based on forum non
conveniens because appellees failed to meet their burden to show that the public
interest factors weighed in favor of a Mexican forum.  The relevant public interest factors are as
follows: (1) the administrative difficulties flowing from court congestion; (2)
the local interest in having localized controversies decided at home; (3) the
interest in having the trial of a diversity case in a forum that is at home
with the law that must govern the action; (4) the avoidance of unnecessary
problems in conflict of laws, or in the application of foreign law; and (5) the
unfairness of burdening citizens in an unrelated forum with jury duty.  See Gulf
Oil, 330 U.S. at 508–09, 67 S. Ct. at 843; Quixtar, 315 S.W.3d at 33–34.

Vinmar relies heavily on its status
as a Texas resident to argue that appellees did not meet its burden to show
that its claims should be dismissed based on forum non conveniens.  Ordinarily, a defendant seeking forum non
conveniens dismissal bears a heavy burden in opposing the plaintiff’s chosen
forum when the plaintiff is a resident of the forum.  See
Quixtar, 315 S.W.3d at 31; see also In re Pirelli Tire, 247 S.W.3d
at 675 (explaining that forum non conveniens doctrine generally affords
substantially less deference to a non-resident’s forum choice).  As discussed, the Fifth Circuit, and other
federal circuits, have taken the position that the forum choice of a resident
plaintiff is given less deference when, as in this case, the plaintiff is
corporation that has chosen to conduct extensive business in foreign countries and
then is injured or defrauded in the foreign venue as a result of those business
transactions.  See DTEX, 508 F.3d at 795. 
We agree with the logic and reasoning underlying this view.  

Here, the record shows that Vinmar
is a Cayman Islands corporation headquartered in Houston, Texas.  It has offices and subsidiaries in 20
countries, including an agent in Monterrey, Mexico.  Vinmar is part of Vinmar Group, which has
over $1 billion in annual revenues.  Its
corporate webpage, which was offered as evidence by appellees, states that
Vinmar has “been successfully providing international trade, finance, and
logistics in emerging markets for more than a quarter of a century.”  The webpage also states that Vinmar “can
offer financing solutions for suppliers and buyers in many countries throughout
the world,” which is exactly what it did in this case.  

The record shows that Vinmar
undertook to finance the purchase of equipment by a Mexican buyer from two
Mexican sellers.  The equipment was made
in Mexico, was to be delivered in Mexico, and was to be used in Mexico.  The Credit Agreement and Promissory Note were
signed in Mexico and are governed by Mexican law.  The two Seller’s Certificates signed by
appellees were executed in Mexico.  All
communications, including any alleged misrepresentations, from appellees or
Tracomsa sent to Vinmar originated in Mexico. 
The only face-to-face meeting that occurred between the parties occurred
in Mexico.  The alleged conspiracy
between appellees and Tracomsa occurred in Mexico.  

          With respect to contact
with Texas, the record shows that Vinmar alleges that it transferred the money
from its Texas bank account to Kenworth’s bank account in Laredo and to
Utility’s bank account in California.  Appellees
later transferred some of the funds to Tracomsa’s bank account in Laredo.  The record also shows that communications by
appellees to Vinmar were directed to Vinmar’s Houston office.  The record shows that San Antonio Trade Group
is also a Texas resident; however, the extent of its or its principal’s
involvement in this controversy is unclear from the record.

          Although Texas does have
an interest in providing a forum in which a Texas resident can bring its claims,
and in regulating the transfer of funds within its borders, this interest is minimal
when compared with Mexico’s interest in regulating Mexican companies conducting
business and allegedly perpetrating fraud within its boundaries.  As described, this dispute involves (1) representations
and business negotiations originating and occurring in Mexico, (2) several
contracts, including the Seller’s Certificates, executed in Mexico, and (3) appellees’
and Tracomsa’s alleged conduct in Mexico constituting a conspiracy to defraud
Vinmar.  Although Vinmar asserts that the
fraud was directed at it in Texas, the fraud occurred in the context of
Vinmar’s Mexican business transactions with Mexican companies.  Therefore, though this dispute involves a
Texas resident, and involves the transfer of funds in Texas, it is more
properly characterized as a Mexican controversy.

          In its brief, Vinmar
asserts that although alleged, appellees have failed to show that Mexican law
will govern Vinmar’s claims against them. 
Vinmar contends that this militates against a determination that the
balance of public interest factors weighs in favor of dismissal.  We note that federal courts have taken the
position that “[e]ven the possibility that foreign law applies to a dispute is
sufficient to warrant dismissal on forum non conveniens grounds.”  See
Warter v. Boston Securities, S.A., 380 F. Supp. 2d 1299, 1315 (S.D. Fla.
2004) (citing Sigalas v. Lido Maritime,
Inc., 776 F.2d 1512, 1519 (11th Cir. 1985) (indicating that the need to “untangle
problems in conflict of laws” weighs in favor of dismissal) and Proyectos Orchimex de Costa Rica, S.A. v.
E.I. du Pont de Nemours & Co., 896 F. Supp. 1197, 1204 (M.D. Fla. 1995)
(concluding that “the possibility that foreign law will apply weighs strongly
in favor of dismissal”)).  We also note that
the Texas Supreme Court in Quixtar appeared
critical of the intermediate appellate court’s emphasis on the defendant’s
failure to demonstrate any choice of law issues as a reason to overrule the
trial court’s dismissal based on forum non conveniens.  See
Quixtar, 315 S.W.3d at 35.  We are also
mindful that the Gulf oil factors provide
for a flexible inquiry, with no one factor being dispositive.  Piper
Aircraft, 454 U.S. at 249–50, 102 S. Ct. at 263.

          In addition, the last
factor, the burden of jury duty, favors dismissal in this case.  While it is headquartered in Texas, Vinmar is
an international company purposefully seeking to conduct business in foreign
markets.  Although they have an interest,
Texas jurors do not have a strong interest in resolving a dispute arising from
Mexican business transactions, contracts executed in Mexico, and alleged torts emanating
from Mexico directed toward a multinational corporation that thrives on
conducting business in emerging international markets.  Significantly, this controversy arose in Mexico
and primarily involves Mexican residents.  See Gulf Oil, 330 U.S. at 508–09, 67 S. Ct.
at 843 (“Jury duty is a burden that ought not be imposed upon the people of a
community which has no relation to the litigation.”).  

          Based on the record, we
conclude that the trial court did not abuse its discretion in implicitly determining
that appellees presented sufficient evidence to tip the balance of the public
interest factors in favor of dismissal. 
We further hold that the trial court did not abuse its discretion when
it dismissed Vinmar’s claims against Utility and Kenworth based on the common
law doctrine of forum non conveniens.

          We overrule Vinmar’s third
issue.  Because this issue is dispositive
of the appeal, we do not reach Vinmar’s other issues.  

Conclusion

          We affirm the judgment of
the trial court.  

 

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Jennings, Higley, and Sharp.

Justice Sharp, concurring in judgment only.

 











[1]           Vinmar did not contest the adequacy of
Mexico as a forum until its motion for new trial and motion for
reconsideration.  Appellees assert, “[T]hose
post-ruling motions cannot be used to correct deficiencies or to raise grounds
or evidence not presented timely.” 
Because the substance of Vinmar’s arguments are without merit, we need
not determine whether the arguments were timely raised.